## PEREIRA ET AL. v. UNITED STATES.

No. 50.   Argued October 20, 1953.—Decided February 1, 1954.

2

*Charles L. Sylvester* argued the cause for petitioners. With him on the brief was *William H. Fryer*.

*John R. Wilkins* argued the cause for the United States. With him on the brief were *Acting Solicitor General Stern, Assistant Attorney General Olney* and *Beatrice Rosenberg*.

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

The petitioners, Pereira and Brading, were convicted in the District Court for the Western District of Texas under three counts of an indictment charging violation of the mail fraud statute, 18 U. S. C. (Supp. V) § 1341, violation of the National Stolen Property Act, 18 U. S. C. (Supp. V) § 2314, and a conspiracy to commit the aforesaid substantive offenses, 18 U. S. C. (Supp. V) § 371. The Court of Appeals for the Fifth Circuit affirmed. 202 F. 2d 830. This Court granted certiorari to consider questions which are important to the proper administration of criminal justice in the federal courts. 345 U. S. 990.

On April 19, 1951, Mrs. Gertrude Joyce, a wealthy widow, fifty-six years old, and her younger half-sister, Miss Katherine Joyner, were accosted by the petitioner Brading as they were about to enter a hotel in El Paso, Texas. Mrs. Joyce and her sister had just arrived from their home in Roswell, New Mexico, and were preparing to register at the hotel. Brading identified himself, assisted them in parking their car, and invited them into the hotel bar to meet a friend of his. They accepted. The friend was petitioner Pereira, thirty-three years of age. After a few drinks, the men suggested that they all go to Juarez for dinner. The women accepted, and after dinner visited some night clubs with the petitioners. Pereira devoted himself to Mrs. Joyce, telling her that their meeting was an "epoch" in his life. He mentioned that he was getting a divorce. This same performance was repeated the following night. When Pereira said that he would like to return to Roswell with the women, Mrs. Joyce invited the two men to be her house guests, and they accepted. Pereira commenced to make love to Mrs. Joyce, and she responded to his attentions. On May 3, Pereira exhibited a telegram to Mrs. Joyce, in the presence

of Brading and Miss Joyner, stating that his divorce would be granted on May 27, but that he would not receive his share of the property settlement, some $48,000, for a month.

Brading represented himself as a prosperous oil man, dealing in leases, and Pereira as the owner and operator of several profitable hotels. Brading then told Mrs. Joyce that Pereira was about to lose an opportunity to share in the profits of some excellent oil leases because of the delay in the divorce property settlement, and persuaded her to lend Pereira $5,000.

Pereira suggested that he and Mrs. Joyce take a trip together to "become better acquainted." He borrowed $1,000 from her to finance the trip. Brading joined them at Wichita Falls, and the three of them continued the trip together as far as Dallas. Pereira discussed his purported hotel business in Denver during this part of the trip. He stated that he was giving two hotels to his divorced wife, but intended to re-enter the hotel business in the fall. In the meantime, he was going to "play a little oil" with Brading. In Hot Springs, Arkansas, Pereira proposed marriage and was accepted. Brading reappeared on the scene, expressing great joy at the impending marriage. Pereira then told Brading, in the presence of Mrs. Joyce, that he would have to withdraw from further oil deals and get a hotel to assure himself of a steady income.

Pereira and Mrs. Joyce were married May 25, 1951, in Kansas City, Missouri. While there, Pereira persuaded Mrs. Joyce to procure funds to enable him to complete an arrangement to purchase a Cadillac through a friend. She secured a check for $6,956.55 from her Los Angeles broker, and drawn on a California bank, which she endorsed over to Pereira. The price of the car was $4,750, and she instructed Pereira to return the balance of the proceeds of the check to her. He kept the change.

From that time on, Pereira and Brading, in the presence of Mrs. Joyce, discussed a hotel which by words and conduct they represented that Pereira was to buy in Greenville, Texas. They took Mrs. Joyce—by this time Mrs. Pereira—to see it, and exhibited an option for its purchase for $78,000 through a supposed broker, "E. J. Wilson." Pereira asked his then wife if she would join him in the hotel venture and advance $35,000 toward the purchase price of $78,000. She agreed. It was then agreed, between her and Pereira, that she would sell some securities that she possessed in Los Angeles, and bank the money in a bank of his choosing in El Paso. On June 15, she received the check for $35,000 on the Citizens National Bank of Los Angeles from her brokers in Los Angeles, and gave it to Pereira, who endorsed it for collection to the State National Bank of El Paso. The check cleared, and on June 18, a cashier's check for $35,000 was drawn in favor of Pereira.

At five o'clock in the morning of June 19, Pereira and Brading, after telling their victim that they were driving the Cadillac to a neighboring town to sign some oil leases, left her at home in Roswell, New Mexico, promising to return by noon. Instead Pereira picked up the check for $35,000 at the El Paso Bank, cashed it there, and with Brading left with the money and the Cadillac.

That was the last Mrs. Joyce saw of either petitioner, or of her money, until the trial some seven months later. She divorced Pereira on November 16, 1951.

The record clearly shows that Brading was not an oil man; that Pereira was not a hotel owner; that there was no divorce or property settlement pending in Denver; that Pereira arranged to have the telegram concerning the divorce sent to him by a friend in Denver; that there were no oil leases; that the hotel deal was wholly fictitious; and that "E. J. Wilson" was the petitioner Brading. The only true statements which the petitioners

6

made concerned the purchase of the Cadillac, and they took that with them. Pereira and Brading contrived all of the papers used to lend an air of authenticity to their deals. In short, their activities followed the familiar pattern of the "confidence game."

The petitioners challenge the admissibility of Mrs. Joyce's testimony as being based on confidential communications between Mrs. Joyce and Pereira during the marriage. Petitioners do not now contend that Mrs. Joyce was not a competent witness against her ex-husband. They concede that the divorce removed any bar of incompetency. That is the generally accepted rule. Wigmore, Evidence, § 2237; 58 Am. Jur., Witnesses, § 204. Petitioners rely on the proposition that while divorce removes the bar of incompetency, it does not terminate the privilege for confidential marital communications. Wigmore, Evidence, § 2341 (2); 58 Am. Jur., Witnesses, § 379. This is a correct statement of the rule, but it is inapplicable to bar the communications involved in this case, since under the facts of the case, it cannot be said that these communications were confidential. Although marital communications are presumed to be confidential, that presumption may be overcome by proof of facts showing that they were not intended to be private. *Blau* v. *United States,* 340 U. S. 332; *Wolfle* v. *United States,* 291 U. S. 7. The presence of a third party negatives the presumption of privacy. Wigmore, Evidence, § 2336. So too, the intention that the information conveyed be transmitted to a third person. *Id.,* § 2336. The privilege, generally, extends only to utterances, and not to acts. *Id.,* § 2337. A review of Mrs. Joyce's testimony reveals that it involved primarily statements made in the presence of Brading or Miss Joyner, or both, acts of Pereira which did not amount to communications, trips taken with third parties, and her own acts. Much of her

testimony related to matters occurring prior to the marriage. Any residuum which may have been intended to be confidential was so slight as to be immaterial. Cf. *United States* v. *Mitchell,* 137 F. 2d 1006, 1009.

The court below was not in error in admitting Mrs. Joyce's testimony.

The petitioners challenge their conviction on the substantive counts on the ground that there was no evidence of any mailing or of transporting stolen property interstate, the gist of the respective offenses. These contentions are without merit.

The mail fraud statute provides:

"§ 1341. Frauds and swindles.

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both." 18 U. S. C. (Supp. V) § 1341.

The National Stolen Property Act provides:

"§ 2314. Transportation of stolen goods, securities, monies, or articles used in counterfeiting.

"Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud . . . .

"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both. . . ." 18 U. S. C. (Supp. V) § 2314.

To constitute a violation of these provisions, it is not necessary to show that petitioners actually mailed or transported anything themselves; it is sufficient if they caused it to be done. 18 U. S. C. (Supp. V) § 2 (b).

Petitioners do not deny that the proof offered establishes that they planned to defraud Mrs. Joyce. Collecting the proceeds of the check was an essential part of that scheme. For this purpose, Pereira delivered the check drawn on a Los Angeles bank to the El Paso bank. There was substantial evidence to show that the check was mailed from Texas to California, in the ordinary course of business.

The elements of the offense of mail fraud under 18 U. S. C. (Supp. V) § 1341 are (1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme. It is not necessary that the scheme contemplate the use of the mails as an essential element. *United States* v. *Young,* 232 U. S. 155. Here, the scheme to defraud is established, and the mailing of the check by the bank, incident to an essential part of the scheme, is established. There remains only the question whether Pereira "caused" the mailing. That question is easily answered. Where one does an act with

knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he "causes" the mails to be used. *United States* v. *Kenofskey,* 243 U. S. 440. The conclusion that Pereira's conviction under this count was proper follows naturally from these factors.

As to the charge of causing stolen property to be transported in interstate commerce, the validity of Pereira's conviction is even more apparent. Sections 1341 and 2314 of Title 18 constitute two separate offenses, and a defendant may be convicted of both even though the charges arise from a single act or series of acts, so long as each requires the proof of a fact not essential to the other. *Gavieres* v. *United States,* 220 U. S. 338; *Blockburger* v. *United States,* 284 U. S. 299. 18 U. S. C. (Supp. V) § 2314 requires (1) knowledge that certain property has been stolen or obtained by fraud, and (2) transporting it, or causing it to be transported, in interstate commerce. It is obvious that the mail fraud offense requires different proof. The transporting charge does not require proof that any specific means of transporting were used, or that the acts were done pursuant to a scheme to defraud, as is required for the mail fraud charge. *United States* v. *Sheridan,* 329 U. S. 379. When Pereira delivered the check, drawn on an out-of-state bank, to the El Paso bank for collection, he "caused" it to be transported in interstate commerce. It is common knowledge that such checks must be sent to the drawee bank for collection, and it follows that Pereira intended the El Paso bank to send this check across state lines. *United States* v. *Sheridan, supra,* at 391. The trial court charged the jury that one who "aids, abets, counsels, commands, induces or procures" the commission of an act is as responsible for that act as if he had directly committed the act himself.

See 18 U. S. C. (Supp. V) § 2 (a). *Nye & Nissen* v. *United States*, 336 U. S. 613. The jury found Brading guilty in the light of this instruction. The Court of Appeals affirmed on the ground that the evidence supported conviction under this charge.*

The evidence is clear and convincing that Brading was a participant in the fraud from beginning to end. Brading made the initial contact with the victim. He persuaded her to part with $5,000, as a loan to Pereira for investment in some nonexistent oil leases. He was present and participated in conversations about buying the hotel lease. He engaged a telephone-answering service under the name of "E. J. Wilson," the name of Pereira's purported broker. The evidence established that he sent a telegram to Pereira authorizing an extension of the supposed option to purchase the hotel, signing it "E. J. Wilson." He supplied the false excuse for Pereira's departure from the victim, and went with Pereira to collect the proceeds of the check. He and Pereira fled together with the money.

The "aiding and abetting" instruction entitled the jury to draw inferences supplying any lack of evidence directly connecting the petitioner Brading with the specific acts charged in the indictment from the abundant circumstantial evidence offered. The jury was properly charged on this theory. There is ample evidence of the petitioners' collaboration and close cooperation in the fraud from

---

*The Government argues that Brading's conviction on the substantive offenses can be affirmed on the basis of *Pinkerton* v. *United States*, 328 U. S. 640, since the record demonstrates that he conspired to defraud Mrs. Joyce and the acts charged in the substantive offenses were acts in furtherance of that design. The *Pinkerton* case, however, is inapplicable here since the jury was not instructed in terms of that theory. *Nye & Nissen* v. *United States*, 336 U. S. 613.

which the jury could conclude that Brading aided, abetted, or counseled Pereira in the commission of the specific acts charged. See *Nye & Nissen* v. *United States, supra,* at 619. The Court of Appeals has passed on the sufficiency of the evidence to sustain Brading's conviction on this theory. We see no reason to upset the findings of the courts below.

The petitioners allege that their conviction on both the substantive counts and a conspiracy to commit the crimes charged in the substantive counts constitutes double jeopardy. It is settled law in this country that the commission of a substantive offense and a conspiracy to commit it are separate and distinct crimes, and a plea of double jeopardy is no defense to a conviction for both. See *Pinkerton* v. *United States,* 328 U. S. 640, 643–644, and cases cited therein. Only if the substantive offense and the conspiracy are identical does a conviction for both constitute double jeopardy. Cf. *Gavieres* v. *United States,* 220 U. S. 338. The substantive offenses with which petitioners were charged do not require more than one person for their commission; either could be accomplished by a single individual. The essence of the conspiracy charge is an agreement to use the mails to defraud and/or to transport in interstate commerce property known to have been obtained by fraud. Pereira's conviction on the substantive counts does not depend on any agreement, he being the principal actor. Similarly, Brading's conviction does not turn on the agreement. Aiding, abetting, and counseling are not terms which presuppose the existence of an agreement. Those terms have a broader application, making the defendant a principal when he consciously shares in a criminal act, regardless of the existence of a conspiracy. *Nye & Nissen* v. *United States, supra,* at 620. Thus, the charge of conspiracy requires proof not essential to the convictions on

the substantive offenses—proof of an agreement to commit an offense against the United States—and it cannot be said that the substantive offenses and the conspiracy are identical, any more than that the two substantive offenses are identical.

Petitioners further contend that there was no evidence that they *agreed* to use the mails in furtherance of the scheme to defraud Mrs. Joyce or that they *agreed* to transport stolen property in interstate commerce. It is not necessary that an agreement to use the mails or transport stolen property exist from the inception of the scheme to defraud. If there was such an agreement at any time, it is sufficient. The existence of a conspiracy to defraud Mrs. Joyce is not denied. Pereira obtained a check from the victim for the purchase of an automobile. That check was drawn on a Los Angeles bank by Mrs. Joyce's brokers. When the subject of purchasing the hotel was broached, Mrs. Joyce told Pereira that she would have to have her California broker sell some stocks to obtain the funds for the purchase. When there was a delay in contacting the broker, Brading, as "E. J. Wilson," sent a telegram extending the spurious option for the purchase of the hotel. There is no doubt about Pereira's knowledge that a check on an out-of-state bank would be involved. From what we have said with regard to the substantive offenses, it is also clear that an intent to collect on the check would include an intent to use the mails or to transport the check in interstate commerce. It was certainly not improper to allow the jury to determine from the circumstances whether Brading shared Pereira's knowledge and agreed with him as to the use of the only appropriate means of collecting the money. It would be unreasonable to suppose that Brading would be so closely associated with Pereira in the scheme to defraud without knowing the details related to the realization of their common

goal. There is no reason for this Court to upset the jury's finding of conspiracy.

For the foregoing reasons, the judgment below is

*Affirmed.*

MR. JUSTICE REED took no part in the consideration or decision of this case.

MR. JUSTICE MINTON, with whom MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS join, concurring in part and dissenting in part.

That a monumental fraud was perpetrated by the petitioners on Mrs. Joyce in the true fashion of a confidence game cannot be disputed. Such fraud could be punished by the States. For the United States to take cognizance of the offenses, the mails had to be used to carry out the fraud or the check fraudulently obtained must have been carried across state lines. That is what the Government charged. Count one charged that they caused a letter to be mailed from El Paso, Texas, to Los Angeles, California, on June 15, 1951. Count ten charged that on or about the same date they caused the check, in the amount of $35,286.78, to be transported in interstate commerce from El Paso to Los Angeles, knowing it was obtained by fraud. Count 11 charged a conspiracy to commit the substantive offenses.

I would affirm the convictions except as to Brading on the substantive counts. To convict on the substantive counts, the petitioners must have actually used the mails to transport the check from El Paso to Los Angeles. The use may be proved by direct or circumstantial evidence, but it must be proved. Brading must have used, or must have known or from the facts and circumstances be reasonably expected to have known, that Pereira actually

would use the mails. *United States* v. *Peoni,* 100 F. 2d 401, 402. To be guilty of the conspiracy, Brading had only to reasonably anticipate that Pereira might use the mails, and if he did subsequently use them, then Brading is bound.

The elements of the offense under the Mail Fraud statute are (1) a scheme to defraud which (2) reasonably contemplates the use of the mails, and (3) use of the mails in furtherance of the plan. The National Stolen Property Act is violated if (1) one transports securities or money of the value of $5,000 or more in interstate commerce and (2) does so knowing they have been taken by fraud.

Concededly, Brading did not participate directly in the use of the mails to transport the thirty-five thousand dollar check from El Paso to Los Angeles. He can be convicted, if at all, only as an aider and abettor. *Nye & Nissen* v. *United States,* 336 U. S. 613, 618. There is no evidence to establish that he could reasonably have expected that the mails would be used in carrying out the scheme.

Three financial transactions are mentioned by the Court in its opinion. First, the $5,000 transaction. That all took place in Roswell, New Mexico, where Mrs. Joyce cashed a check on a Roswell bank and gave the proceeds to Pereira. No federal offense there. The Cadillac transaction was liquidated by a check received from Los Angeles by Mrs. Joyce and turned over to Pereira, who cashed it in Kansas City, Missouri. Brading was not shown to have known where this money came from, and, more important, it was not proved that that check was mailed, as was done in the case of the third check, for $35,286.78.

Mrs. Joyce arranged for this check, the only transaction upon which the convictions are based, by selling securities in Los Angeles. She received the check and

turned it over to Pereira in Roswell, New Mexico, from whence he took it to El Paso, and there, on June 15, 1951, after securing Mrs. Joyce's endorsement, caused it to be sent through the mails for collection. The evidence does not show where Brading was at the time these events occurred. He next appeared at Mrs. Joyce's home in Roswell after the completion of the acts constituting the federal crimes, and on June 19, 1951, left with Pereira, ostensibly to see about some oil leases in Texas. The same day Pereira collected the money at the El Paso bank. There is no direct evidence that Brading actually knew or had reason to believe that a check would be received or that the check would be drawn on an out-of-town bank, necessitating its being placed in the mails for collection.

Lacking such proof, an important element of each crime charged, namely, that Brading had reason to foresee the use of the mails or interstate commerce, has not been established. It is true that the use of the mails need not have been originally intended as a part of the plan, but its use must have been a natural, reasonably foreseeable means of executing the plan. Brading might well have assumed that cash would be given to Pereira, or, if a check, one drawn on a local bank.

It may well be reasonable to infer that one receiving a check drawn on an out-of-town bank would know that it would be mailed in the process of collection, but to that inference must be added the inference that Brading had reason to know that a check would be received and also that the check would be on an out-of-town bank. This is piling inference upon inference, in the absence of direct proof. In short, this is simply guessing Brading into the federal penitentiary. It may be good guessing, but it is not proof.

Brading is clearly an aider and abettor of the scheme to defraud, which a State may punish, but is he an aider

and abettor of the federal offenses of using the mails to defraud and causing the fraudulent check to be carried across state lines? I think not, unless we are willing to say that aiding and abetting the scheme to defraud is aiding and abetting any means used for the consummation of the fraud. Brading must aid and abet the federal crimes, not just the fraudulent scheme. There is not a scintilla of evidence that Brading aided and abetted anything more than the scheme to get the money from Mrs. Joyce.

In *Bollenbach* v. *United States,* 326 U. S. 607, the defendant was charged with transporting securities in interstate commerce knowing them to have been stolen, and with conspiracy to commit the offense. He was convicted of conspiracy. The court had instructed the jury that possession of the securities by the defendant in New York soon after their theft in Minnesota was sufficient to warrant the jury in finding that the defendant knew the securities had been stolen, and this would support the further "presumption" that the defendant was the thief and transported the securities in interstate commerce. This Court set the conviction aside. The latter inference was said to be untenable.

In this case, I think it untenable to infer that Brading had reason to know that Pereira would get a foreign check that must be sent through the mails and in its handling must be carried across state lines, thereby making out the federal crimes. It is untenable because it is unreasonable to infer one or more facts from the inference of another fact. *Looney* v. *Metropolitan R. Co.,* 200 U. S. 480, 488; *United States* v. *Ross,* 92 U. S. 281.