**UNITED STATES of America,
Plaintiff,**

**v.**

**Ellis Lloyd HOLMES, Defendant.**

**No. 75 CR 14–W–1.**

United States District Court,
W. D. Missouri, W. D.

March 10, 1975.

Bert C. Hurn, U. S. Atty., Albert D. Hoppe, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Thomas M. Bradshaw, Asst. Public Defender, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

JOHN W. OLIVER, District Judge.

### I.

This case pends on defendant's motion to dismiss the five count indictment in this case which attempts to allege violations of § 1343, Title 18, United States Code.[1] Defendant's motion will be granted for reasons we now state.

While the language of § 1343 tracks very closely with that of § 1341, Title 18, United States Code, applicable to "Frauds and Swindles," and is included in Chapter 63 dealing with Mail Fraud, the legislative history of the comparatively recently enacted § 1343 shows that it was initially directed against "Fraud by Radio", and was enacted as a tag-end amendment to the 1952 amendments to the Communications Act. See 1952 U.S. Code Cong. and Adm.News, p. 2256. In 1956 the statute was amended to include communications as well as interstate. See 1956 U.S.Code Cong. and Adm. News, p. 3091.[2]

The relevant portions of § 1343 provide that:

> Whoever, having devised or intending to devise any scheme or artifice to defraud . . . transmits or causes to be transmitted by means of wire . . . communication . . . any writings . . . for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

The indictment alleges in substance that the defendant, in his capacity as clerk operator for Western Union, (1) received money from customers desiring to purchase Western Union money orders; (2) that Western Union did not in fact receive the funds inasmuch as the defendant "would purloin and convert the funds collected to his own use;" and that (3) the defendant in fact transmitted the wires transferring the funds paid for by the customers even though "such funds were not accounted for or remitted to Western Union."

The parties have stipulated the names of the individuals in paragraph 2 of each count and have also stipulated that each intended recipient of the Western Union money orders did in fact receive the respective money orders involved. It is stipulated for purposes of this motion that the defendant did in fact convert each payment "to his own use and did not account for or remit any of said sum[s] to Western Union."

---

1. A copy of the indictment and a stipulation of facts entered into by the parties are attached as Appendices A and B, respectively.

2. For the purposes of this opinion we shall assume that the Congress had something more in mind than radio and television communications and that the inclusion of "wire" communications is broad enough to cover communications made by telephone or telegraph.

## II.

Determination of the pending motion requires an application of principles stated in four Supreme Court decisions which defined the scope of § 1341. The parties agree that the identical language found in § 1343 must be given the same construction as that given § 1341.

Kann v. United States, 323 U.S. 88, 65 S.Ct. 148, 89 L.Ed. 88 (1944), reversed a conviction under § 1341 in which directors and other officers of a corporation deprived that corporation of profits rightfully belonging to it by the creation of a dummy subsidiary corporation from which they received bonuses. The Court concluded that it could not be said that the mailings involved in the case "were for the purpose of executing the scheme, as the statute requires."[3]

The Court concluded that the judgment of conviction should be reversed on the ground that "one element of the offense defined by the statute, namely, that the mailing must be for the purpose of executing the fraud, is lacking in the present case." Kann pointed out that "the federal mail fraud statute does not purport to reach all frauds, but only those limited instances in which the use of the mails is a part of the execution of the fraud, leaving all other cases to be dealt with by appropriate state law."[4]

Parr v. United States, 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960), reversed a judgment of conviction because the mailings there involved were not in and of themselves fraudulent and could not be said to be "a part of the execu-

tion of the fraud," within the meaning of Kann, or "incident to an essential part of the scheme," within the language of Pereira v. United States, 347 U.S. 1, 8, 74 S.Ct. 358, 363, 98 L.Ed. 435 (1954).

Mr. Justice Frankfurter vigorously dissented. He, however, conceded that broad as § 1341 may be, it could not cover "the case of a doctor's secretary who sends out just bills but intends to steal from the proceeds" [363 U.S. at 400, 80 S.Ct. at 1188]. The dissent noted that the doctors' patients were not injured by the secretary's act and that the patients "are not defrauded." The doctor, of course, would be defrauded; but his defraudment would not be by reason of any use of the mails.

Mr. Justice Frankfurter's dissent illustrates that there is no conflict between principles stated in Kann and those applied by the majority opinion in Parr; his dissent was on the facts, not the law.

United States v. Sampson, 371 U.S. 75, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962) reversed a district court dismissal of an indictment because the district court was under the impression that Kann and Parr established some sort of an "automatic rule that a deliberate, planned use of the mails after the victims' money had been obtained can never be 'for the purpose of executing' the defendant's scheme."

United States v. Maze, 414 U.S. 394, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974) re-

3. United States v. Kenofskey, 243 U.S. 440, 37 S.Ct. 438, 61 L.Ed. 836 (1916), was distinguished in Kann on the ground that in Kann there was no allegation or proof that the mails were used as a "means of concealment so that further frauds which are a part of the scheme may be perpetuated." We shall discuss the government's "concealment," "lulling," and "delay" arguments in a later part of this opinion.

4. Justice Douglas' dissent in Kann was based in part on his view that the allegations of the indictment and the proof established "a continuing venture," in which "the use of the mails was crucial to the total success of the fraudulent project." The dissent also directed

attention to the possibility that the use of the mails had delayed detection and postponed the time that the defendants there involved would "be called upon to disgorge." The "concealment" or "delay" language runs through many of the cases before the Supreme Court's most recent decision in United States v. Maze, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974). So far as this case is concerned, the short answer to that argument is that the indictment does not attempt to allege that concealment and delay were a part of the defendant's alleged fraud. As stated in footnote 3, above, this question will be more fully discussed in a later part of this opinion.

flects the most recent 5–4 decision as to the scope of § 1341. Mr. Justice Rehnquist concluded that the mailings incident to the use of a stolen credit card were not "sufficiently closely related to respondent's scheme so as to bring his conduct within the statute." *Kann's* somewhat vague "fruition" language was quoted and relied upon by the majority opinion. On the facts, the majority concluded that "respondent's scheme reached fruition when he checked out of the motel, and there is no indication that the success of his scheme depended in any way on which of his victims ultimately bore the loss." The actual holding of the case was that the mailings "caused" by the collections incident to a BankAmericard credit card did not involve use of the mails "for the purpose of executing" the fraudulent scheme or artifice within the meaning of § 1341.

■■■■ Application of the principles stated in the four Supreme Court cases requires that we conclude that the telegraph wires of Western Union were not used for the purpose of executing any scheme or artifice to defraud, within the meaning of § 1343, and that the indictment, when considered in light of the government's bill of particulars and the stipulation of the parties, must be dismissed. It is obvious that the allegations of the complaint, if true, may establish a violation of any number of state laws, but that circumstance is irrelevant so far as the determination of the pending motion is concerned. As stated by Mr. Justice Whittaker in his final sentence in *Parr*, "the showing, however convincing, that the state crimes of misappropriation, conversion, embezzlement and theft were committed, does not establish the federal crime of using the mails to defraud, and, under our vaunted legal system, no man, however bad his behavior, may be convicted of a crime of which he was not charged, proven and found guilty in accordance with due process." [363 U.S. 394, 80 S.Ct. 1185]

### III.

We have carefully considered the government's concise and carefully prepared brief. The government properly points

out that a part of defendant's argument is based on the contention that the defendant's assumed fraud had been successfully completed *prior* to the transmittal of any interstate wire communication. Defendant does rely in part upon the "fruition" language of *Kann*. The government properly points out that *Sampson* held that *Kann* and *Parr* did not establish any *per se* rule that a subsequent transmittal could never be considered as a part of the execution of a particular defendant's fraudulent scheme. *Sampson,* however, does not establish the principle that a subsequent transmittal must, under all circumstances, be considered as supporting a finding that the subsequent transmittal was "for the purpose of executing such scheme or artifice" within the meaning of § 1343. Each case must be determined on the basis of the particular circumstances involved. The question presented is whether, on the basis of those facts, it can be said that the defendant used the wires "for the purpose of executing" his fraudulent scheme or, was the use of the wires but remotely and insignificantly connected with that scheme.

The government correctly argues that it is not necessary for the government to prove that the defendant actually sent the messages over the wire. *Pereira* clearly holds that one "causes" the mails to be used if he "does an act with knowledge that the use of the mails will follow in the ordinary course of business." We agree that a jury could draw a permissible inference from the factual circumstances alleged in the indictment and agreed to in the stipulation that the defendant could be found to have "caused" the money orders to be transmitted. We also agree that a jury could draw a permissible inference that the defendant caused the money orders to be transmitted in order to delay the discovery of the assumed embezzlement of the Western Union funds, a factual circumstance upon which the government predicates its final argument.

### IV.

The difficulty with the government's "lulling" (or "concealment" or "delay")

argument is that it has been implicitly rejected by the Supreme Court in the *Maze* case. For example, the government in this case relies upon United States v. Chason, (2nd Cir. 1971) 451 F.2d 301, to support its "lulling" or "concealment" argument. *Chason* was a credit card case decided before *Maze*. The Second Circuit affirmed a § 1341 conviction on the theory that various mailings follow in the ordinary course of business after a defendant successfully and fraudulently uses a lost or stolen credit card. The Second Circuit in *Chason* was one of five Circuits who stretched § 1341 to cover stolen credit cards. The rationale of *Chason* and like cases was based upon the notion that "the delay in discovering the scheme, caused by the use of the mails, was sufficient for a violation of § 1341." Only the Tenth Circuit in United States v. Lynn, (10th Cir. 1972) 461 F.2d 759, and the Sixth Circuit in United States v. Maze, (6th Cir. 1972) 468 F.2d 529, rejected the "lulling" or "delaying" argument adopted by at least five other Circuits.

*Certiorari* was granted in *Maze* for the express purpose of resolving the conflict among the Courts of Appeals as to the circumstances under which the fraudulent use of a credit card may violate § 1341. That conflict is noted in footnote 2 on page 398 of 414 U.S., 94 S.Ct. 645, 38 L.Ed.2d 603. The Supreme Court's affirmance of the Sixth Circuit's reversal in *Maze* of the § 1341 conviction requires that we reject the delay rationale of *Chason* and all other cases which relied upon the rationale that the delay factor, standing alone, could be considered as a factual circumstance which could be said to support a § 1341 conviction.

*Maze* carefully distinguished *Pereira* on the ground that the mailings involved in that case "played a significant part in enabling the defendant in that case to acquire dominion over the $35,000."

The mailings caused by the fraudulent use of a credit card involved in *Maze* obviously had nothing to do with the defendant's fraudulent scheme, other than to delay eventual detection. The same thing is true in regard to the transmittal of the money orders in the present case.

█ Principles applied in *Maze* require this Court to conclude that the transmittal of the Western Union money orders can not be said to have been done "for the purpose of executing" defendant's assumed fraudulent scheme or artifice, within the meaning of § 1343.[5] Congress has not yet made embezzlement from companies which transmit wires in interstate commerce a federal offense. Although § 1343 is a relatively recent statute, it, like the mail fraud statute, "does not purport to reach all frauds, but only those limited instances in which the use of [wire communications] is a part of the execution of the fraud, leaving all other cases to be dealt with by appropriate state law." Kann v. United States, 323 U.S. at 95, 65 S.Ct. at 151.

The Court is grateful to counsel for their exemplary cooperation with each other and the Court for agreeing to the procedures under which the questions presented by the pending motion could be decided in an expeditious and inexpensive manner.

For the reasons stated, it is

Ordered that defendant's Motion to Dismiss should be and the same is hereby granted.

## INDICTMENT

THE GRAND JURY CHARGES THAT:

### COUNT I

1. During the period from on or about August 10, 1974, to on or about September 23, 1974, the defendant ELLIS LLOYD HOLMES devised and in-

---

5. We do not, of course, hold that the transmittal of money orders may never constitute a part of a fraudulent scheme which could be a violation of § 1343. Nor do we conclude that Congress could not constitutionally pass a statute which could make defendant's assumed conduct a violation of federal law.

## APPENDIX A

tended to devise a scheme and artifice to defraud Western Union by means of wire communications, the scheme and artifice to defraud by wire being in substance as follows: it was a part of the scheme and artifice to defraud that Defendant HOLMES, in his capacity as clerk-operator for Western Union, would obtain money from customers desiring to purchase Western Union telegraphic money orders; and it was a further part of the scheme and artifice to defraud that Western Union would not receive the funds first collected from the customers inasmuch as Defendant HOLMES would purloin and convert the funds collected to his own use; and it was a further part of the scheme and artifice to defraud that Defendant HOLMES would cause to be transmitted wires purportedly transferring the funds paid by the customers for telegraphic money orders but in reality such funds were not accounted for or remitted to Western Union by Defendant HOLMES.

2. On or about the 10th day of August, 1974, in the Western District of Missouri, in violation of Title 18, United States Code, Section 1343, ELLIS LLOYD HOLMES, for the purpose of executing the aforesaid scheme and artifice to defraud and attempting to do so, did cause to be transmitted in interstate commerce by means of a wire communication, that is, a Western Union telegraphic money order, between Kansas City, Missouri, and Portland, Oregon, certain signs, signals, and sounds.

### COUNT II

1. The Grand Jury realleges all of the first count of this indictment except those contained in the last paragraph thereof.

2. An or about the 13th day of Sep- executing the aforesaid scheme and artifice to defraud and attempting to do so, did cause to be transmieed in interstate commerce by means of a wire communication; that is, a Western Union telegraphic money order, between Kansas

City, Missouri, and Los Angeles, California, certain signs, signals, and sounds.

### COUNT III

1. The Grand Jury realleges all of the first count of this indictment, except those contained in the last paragraph thereof.

2. On or about the 13th day of September, 1974, in the Western District of States Code, Section 1343, ELLIS LLOYD HOLMES, for the purpose of executing the aforesaid scheme and artifice to defraud and attempting to do so, did cause to be transmitted in interstate commerce by means of a wire communication, that is, a Western Union telegraphic money order, between Kansas City, Missouri, and Los Angeles, California, certain signs, signals, and sounds.

### COUNT IV

1. The Grand Jury realleges all of the first count of this indictment, except those contained in the last paragraph thereof.

2. On or about the 17th day of September, 1974, in the Western District of Missouri, in violation of Title 18, United States Code, Section 1343, ELLIS LLOYD HOLMES, for the purpose of executing the aforesaid scheme and artifice to defraud and attempting to do so, did cause to be transmitted in interstate commerce by means of a wire communication, that is, a Western Union telegraphic money order, between Kansas City, Missouri, and Los Angeles, California, certain signs, signals, and sounds.

### COUNT V

1. The Grand Jury realleges all of the first count of this indictment, except those contained in the last paragraph thereof.

2. On or about the 23rd day of September, 1974, in the Western District of Missouri, in violation of Title 18, United States Code, Section 1343, ELLIS LLOYD HOLMES, for the purpose of executing the aforesaid scheme and artifice to defraud and attempting to do so, did cause to be transmitted in interstate commerce by means of a wire communi-

cation, that is, a Western Union telegraphic money order, between Kansas City, Missouri, and Griffin, Georgia, certain signs, signals, and sounds.

A TRUE BILL

(s) Richard Treaster, Jr.
FOREMAN OF THE GRAND JURY

(s) Albert D. Hoppe
ALBERT D. HOPPE
Assistant United States Attorney

## APPENDIX B

### STIPULATION

COME NOW the parties herein by their respective attorneys of record and, for the sole purpose of the Court's consideration of defendant's Motion to Dismiss filed February 27, 1975, agree and stipulate that upon the trial of the instant case the Government could adduce the following evidence:

1. That defendant, in his capacity as clerk-operator for Western Union, on or about August 10, 1974 in the Western District of Missouri received the total sum of $55.20 from Anthony McGrath in payment of a Western Union Money Order in the sum of $50.00 to be transmitted by wire in interstate commerce to Colleen McGrath; that defendant converted said sum of $55.20, received from Anthony McGrath, to his own use and did not account for or remit any of said sum to Western Union; that Colleen McGrath received the aforesaid money order in the sum of $50.00 from Western Union by interstate wire transmission subsequent to August 10, 1974.

2. That defendant, in his capacity as clerk-operator for Western Union, on or about August 10, 1974 in the Western District of Missouri received the total sum of $45.20 from M. H. Johnson in payment of a Western Union Money Order in the sum of $40.00 to be transmitted by wire in interstate commerce to Delbert M. Ayres; that defendant converted said sum of $45.20, received from M. H. Johnson, to his own use and did not account for or remit any of said sum to Western Union; that Delbert M. Ayres received the aforesaid money order in the sum of $40.00 from Western Union by interstate wire transmission subsequent to August 10, 1974.

3. That defendant, in his capacity as clerk-operator for Western Union, on or about September 13, 1974 in the Western District of Missouri received the total sum of $106.15 from Alfred Chalmers in payment of a Western Union Money Order in the sum of $100.00 to be transmitted by wire in interstate commerce to Edna Mackey; that defendant converted said sum of $106.15, received from Alfred Chalmers, to his own use and did not account for or remit any of said sum to Western Union; that Edna Mackey received the aforesaid money order in the sum of $100.00 from Western Union by interstate wire transmission subsequent to September 13, 1974.

4. That defendant, in his capacity as clerk-operator for Western Union, on or about September 17, 1974 in the Western District of Missouri received the total sum of $259.00 from Spencer Martin in payment of a Western Union Money Order in the sum of $250.00 to be transmitted by wire in interstate commerce to Boyd Martin; that defendant converted said sum of $259.00, received from Spencer Martin, to his own use and did not account for or remit any of said sum to Western Union; that Boyd Martin received the aforesaid money order in the sum of $250.00 from Western Union by interstate wire transmission subsequent to September 17, 1974.

5. That defendant, in his capacity as clerk-operator for Western Union, on or about September 23, 1974 in the Western District of Missouri received the total sum of $617.20 from Morris Stroud, Jr. in payment of a Western Union Money Order in the sum of $600.00 to be transmitted by wire in interstate commerce to Mrs. Dorothy Stroud; that defendant converted said sum of $617.20, received from Morris Stroud, Jr., to his own use and did not account for or remit any of said sum to Western Union; that Mrs. Dorothy Stroud received the aforesaid money order in the sum of $600.00 from Western Union by inter-

state wire transmission subsequent to September 23, 1974.

It is expressly stipulated and agreed by the respective parties, through their attorneys of record, that this Stipulation shall not be deemed an admission by defendant, ELLIS LLOYD HOLMES, and shall not be used against said defendant in any other criminal or civil proceedings.

(s) Thomas M. Bradshaw

THOMAS M. BRADSHAW
Assistant Federal Public Defender
Western District of Missouri
Post Office Box 2635
Kansas City, Missouri   64142

Attorney for Defendant

(s) Albert D. Hoppe

ALBERT D. HOPPE
Assistant United States Attorney
Western District of Missouri
549 U. S. Court House
811 Grand Avenue
Kansas City, Missouri   64106

Attorney for Plaintiff

DATED this 28 day of February, 1975.