UNITED STATES of America

v.

Steve F. GIARRATANO.

Crim. No. 79–150.

United States District Court,
E. D. Louisiana.

July 24, 1979.

Robert J. Boitmann, Asst. U.S. Atty., New Orleans, La., for the United States.

Sidney M. Bach, Gerald D. Wasserman, New Orleans, La., for defendant.

CASSIBRY, District Judge:

This cause came on for hearing on July 11, 1979, on the motion by defendant for judgment of acquittal and/or in arrest of judgment. It was argued by all counsel and submitted.

Whereupon, after due consideration thereof:

IT IS ORDERED that the motion for judgment of acquittal be GRANTED.

REASONS

Defendant urges several grounds in support of his motion. I have considered them all, and find merit in only one: the claim that the evidence concerning the mailing related to Count 1 was not sufficient to support a jury finding of guilt under the mail fraud statute, 18 U.S.C. § 1341.[1]

1. 18 U.S.C. § 1341 provides, in pertinent part: Whoever, having devised or intending to devise any scheme or artifice to defraud, . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail . . . any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

Taking the view most favorable to the government, I conclude that the jury could have found the following facts with respect to Count 1. James Dixon was attempting to obtain a construction loan for the property located at 1036–38 Esplanade Ave. Dixon met with the defendant and discussed the appraisal valuation needed to obtain this loan. Dixon gave the defendant an unauthorized payment of $100. The defendant subsequently appraised the property for an amount sufficient to enable Dixon to obtain the loan. The defendant's appraisal was submitted through channels to the French Market Homestead, which approved the loan. The homestead would not have approved the loan had it known the appraiser had received that $100 payment. Following the approval of the loan, an Act of Sale was passed before the homestead's notary. The notary then filed the Act of Sale into the public records. A copy of the filed Act was provided the homestead. In the regular course of business at the homestead, a file clerk sent a courtesy copy of the Act of Sale to the borrower for his personal records. Dixon received this document through the mails. At the time he received the copy of the Act of Sale, the proceeds of the construction had not been completely disbursed; some disbursements were received by Dixon subsequent to the date he received that letter.

The jury could have found that the defendant "caused" the mailing of this copy of Dixon's Act of Sale. Using the standard recently articulated in *United States v. Maze*, 414 U.S. 395, 94 S.Ct. 645, 648, 38 L.Ed.2d 603 (1974), I find that there was evidence to support a finding that the defendant acted with knowledge that this use of the mails would follow from his conduct, or at least that this use of the mails could reasonably have been foreseen by him. *Accord Pereira v. United States*, 347 U.S. 1, 74 S.Ct. 358, 363, 98 L.Ed. 435 (1954).

■ Much more difficult, however, is the question whether the mailing was "for the purpose of executing" the scheme to defraud, as the statute requires. *Maze, supra.*

This presents a twofold problem. The mailing must occur prior to the fruition of the scheme and must bear a sufficiently close connection to that scheme. *Maze, supra*; *United States v. Pollack*, 175 U.S.App.D.C. 227, 234, 534 F.2d 964, 971 (1976).

The government contends that since the proceeds of the construction loan had not been completely disbursed at the time of the mailing, the mailing did occur prior to the fruition of the scheme to defraud. It is crucial to keep in mind, however, that we are concerned here with fraud on the part of Giarratano, the appraiser, not Dixon, the borrower. Giarratano's fraud consisted of accepting money from Dixon and then making an appraisal that satisfied Dixon. By doing so, he defrauded the Central Appraisal Bureau and the homestead of his services as an unbiased, loyal appraiser. This fraud was completed, well before the copy of the Act of Sale was mailed, when the "tarnished" appraisal was submitted by the defendant. That is what Dixon paid him to do. Everything involved in the performance of his fraud was complete at that point. The actual disbursement of the construction funds was of no concern to the defendant. If, for some reason, the homestead had been unable to disburse to Dixon any of the construction funds, the defendant would have already performed the acts for which he received an unauthorized payment and thereby defrauded his employer and the homestead. Everything constituting biased and disloyal service by the defendant had already been carried out.

The *Maze* case, *supra*, is comparable. There, the defendant used someone else's credit card to obtain motel rooms. The motel operators mailed sales slips concerning these transactions to the bank that issued the credit card, and the bank in turn mailed them to the person to whom the card was issued. The court held that the defendant's scheme to defraud reached fruition when he checked out of the motels. Everything constituting fraudulent conduct on his part had been performed. Every-

thing necessary to his obtaining what he sought by his fraud had been done. It was immaterial to him, or to any consummation of his scheme, how his fraudulent charges were subsequently handled. *See also Kann v. United States*, 323 U.S. 88, 65 S.Ct. 148, 151, 89 L.Ed. 88 (1944).

■ Even if it could be said that the defendant's scheme had not reached fruition, there is an insufficient connection between this scheme and the mailing of a copy of Dixon's Act of Sale. As stated by the Fifth Circuit in *United States v. Crockett*, 534 F.2d 589, 593 (5th Cir. 1976):

> While the mailing must, as the statute requires, be "for the purpose of executing the scheme," *Kann v. United States*, 323 U.S. 88, 94, 65 S.Ct. 148, 151, 89 L.Ed. 88 (1944), "[i]t is not necessary that the scheme contemplate the use of the mails as an essential element. *United States v. Young*, 232 U.S. 155, 34 S.Ct. 303, 58 L.Ed. 548," *Pereira v. United States, supra*, 347 U.S. at 8, 74 S.Ct. at 362; *see United States v. Maze*, 414 U.S. 395, 400, 94 S.Ct. 645, 648, 38 L.Ed.2d 603 (1974). Indeed, it is sufficient if the mailing that is caused is "a part of the execution of the fraud," *Kann v. United States, supra*, 323 U.S. at 95, 65 S.Ct. at 151, or is "incident to an essential part of the scheme," *Pereira v. United States, supra*, 347 U.S. at 8, 74 S.Ct. at 363; see *Parr v. United States, supra*, 363 U.S. 370 at 390, 80 S.Ct. 1171 at 1183, 4 L.Ed.2d 1277.

The mailing in the instant case does not meet these standards. The essential parts of Giarratano's scheme were the acceptance by him of an unauthorized payment from Dixon and the making by him of an appraisal on Dixon's property. The mailing to Dixon of a courtesy copy of the document passing title to the property was neither incident to these essential parts of the scheme nor part of the execution of the fraud. This mailing was very far down the chain of consequences flowing from the defendant's fraud. It was remote from the fraud. The jury could not have found this mailing to have been for the purpose of executing the fraudulent scheme.

On the question of the sufficiency of the connection between the mailing and Giarratano's scheme, the government relies primarily upon three cases: *United States v. Bright*, 588 F.2d 504 (5th Cir. 1979); *United States v. Owen*, 492 F.2d 1100 (5th Cir. 1974); *cert. denied* 422 U.S. 1057, 95 S.Ct. 2680, 45 L.Ed.2d 709 (1975); and *United States v. Moss*, 591 F.2d 428 (8th Cir. 1979). The government contends that each of those cases upheld a connection between a mailing and a fraudulent scheme that was less close than the connection in the instant case. I find, however, that the connections in those cases were much closer than the one at issue here.

In *Bright*, the defendants developed a plan to defraud the estate and beneficiaries of their late cousin by attempting to have probated a forged will. Counts IV through VI of the indictment were based upon the mailing of the local newspaper, which contained a notice to creditors of the estate, to the newspaper's subscribers. The defendants argued that, because Mississippi law required the filing of the notice to creditors, there was no meaningful connection between their scheme and the mailings of newspapers containing this notice. The court held, however, that this requirement was triggered by the fraudulent scheme. But for that scheme, the notice would not have been required and the mailing would not have taken place. The publication was an integral part of the scheme, because it heightened the false impression that the forged will was valid. The mailing in the instant case did not thus affirmatively contribute to the success of defendant's fraudulent scheme, and so the *Bright* case is inapposite. .

In *Owen*, the defendants' scheme involved the ordering of merchandise from suppliers without any intention to pay for it, under the name (and using the credit established by) a hardware store purchased by the defendants. Count 4 of the indictment charged that certain defendants caused a particular supplier to mail to the hardware store a confirmation of a phone order from the store for a substantial

amount of merchandise. That confirmation also contained certain additional shipping instructions and terms. The court found that the letter was not necessary, from the hardware store's point of view, to enable it to obtain the merchandise. But the court went on to say:

> This letter was, however, in accord with business practices associated with the sale of goods, and Moore-Handley [the supplier] obviously sent this letter as a part of the transaction which resulted in the shipment of merchandise to Porter [the hardware store]. Under these circumstances, the jury could have found that . . . the mailing was sufficiently closely related to the scheme so as to bring the conduct within the statute. *United States v. Maze, supra.*

492 F.2d at 1103.

Transactions resulting in the shipment of merchandise were the very basis of the scheme to defraud in *Owen.* They were the occurrences that brought the fraud about. In the instant case, by contrast, the appraisal—not the Act of Sale—was the basis for the scheme to defraud. Giarratano's submission of an appraisal after having received an unauthorized payment was the occurrence that brought the fraud about. Thus, the mailing of a courtesy copy of the Act of Sale in the instant case is not comparable to the mailing of a confirmation of a merchandise transaction in the *Owen* case.

In *Moss,* the defendant procured insurance on the life of another person and then attempted to have that person killed. The process of procurement of the insurance involved telephone calls and mailings. Count Four charged the defendant with causing the mailing of a letter from an insurance broker to the defendant's insurance agent, informing the agent that the defendant had accepted an insurance offer and that the policy was being issued. This information had already been provided to the insurance agent over the telephone; the letter was a confirmation of the phone call. The court found that the letter was not necessary from the defendant's point of view, but facilitated the handling and processing of the insurance application and policy. It was mailed in the regular course of business associated with the issuance of insurance policies.

In the instant case, the copy of the act of sale was mailed in the regular course of business associated with the transfer of title of property—not the making of appraisals. Yet it was this latter activity that, like the issuance of insurance in *Moss,* constitutes the basis for the fraud committed here. Thus, while the mailing in the *Moss* case was a regular part of the activity around which the fraud was based, the same cannot be said for the instant situation.