PER CURIAM.
A jury found the Defendant guilty of an organized scheme to defraud, eight counts of second-degree communications fraud, and 28 counts of third-degree communications fraud. The trial court sentenced him to two years in prison plus probation and ordered restitution to each of the victims. We affirm in part and reverse in part, and write to address only whether the State presented enough evidence to sustain the communications fraud counts where the victims did not testify.
These convictions resulted from a vending machine business owned by the Defendant. He advertised 20 vending routes already in place “in your area” in various city newspapers around the country. There were actually no established vending routes anywhere. The advertisement gave a telephone number. The number connected the customer to a “fronter,” or person who explained the investment opportunity. The fronter would give the customer a name and number of a reference, or “singer,” who would discuss his or her investment in the business.
After talking to the reference, the customer would receive a UPS package providing accurate details about the machines. Once the customer decided to buy, he or she would again talk to a “closer.” The customer would then sign a contract and wire or mail funds. The machine would go out to the customer’s home, and another, usually sub-contracted, company would help the customer find a location for the machine.
The State established at trial that there were never any vending routes in any of the advertised cities. At least one singer testified that he did not own any machines yet he received a paycheck to recount that he owned 10-12 machines and they each had 12-20 vends per day. All evidence showed that the buyers actually received working vending machines on their doorsteps; the State’s case was against the representations made about the nature of the business.
The State established this business procedure largely through the Defendant’s bookkeeper’s testimony. The State walked the bookkeeper through a mound of documents seized from the Defendant’s headquarters. The bookkeeper described *814 the file notations as to which singer spoke with the customer, when the UPS packages were sent out and copies of the wire or money order the customer sent back.
The Defendant claims on appeal that his constitutional right to confrontation was violated by the 18 communication fraud convictions where the victim did not testify. We disagree. The Defendant’s right to confront his witnesses was satisfied because the State used business records, not witness testimony, to show the element of communication. Witness testimony was not required for the State to make its prima facie case; therefore, the Defendant’s constitutional right to confront the witnesses against him was not triggered. We reverse, however, those counts where the State did not prove a communication in furtherance of the scheme through documentation.
To decide whether the State made its prima facie case without witnesses, we examined the Florida Communications Act and federal mail fraud precedent.
“Any person who engages in a scheme to defraud and in furtherance of that scheme, communicates with any person with the intent to obtain property from that person is guilty, for each such act of communication, of communications fraud.” § 817.034(4)(b), Fla. Stat. (2001).
Further, the stated legislative intent of the Act was “to prevent the use of communications technology in furtherance of schemes to defraud by consolidating former statutes concerning schemes to defraud and organized fraud to permit prosecution of these crimes utilizing the legal precedent available under federal mail and wire fraud statutes.” § 817.034(l)(b), Fla. Stat. (2001).
Our reading of the statute does not require the communication itself to be fraudulent. The literal requirements of the statute are that the communication be: 1) in furtherance of the scheme to defraud and 2) made with the intent to obtain property. There is little Florida precedent analyzing the communications fraud portion of the Act. However, the second district has observed, “At the heart of the Act and the two federal statutes is the concept of ‘a scheme to defraud’ with the utilization of communication techniques as the means to accomplish a deceitful objective.” See Batten v. State, 591 So.2d 960 (Fla. 2d DCA 1991).
Like the second district, we looked to federal mail and wire fraud precedent as instructed by the Act. Federal precedent requires but the slimmest connection of the scheme to defraud with the use of the mail; mailing seems to be the jurisdictional threshold rather than a substantive element. The use of the mail does not have to be an essential element of the scheme to defraud to sustain a mail fraud conviction. See United States v. Young, 232 U.S. 155, 34 S.Ct. 303, 58 L.Ed. 548 (1914). For example, in Pereira v. United States, an out-of-state check served as the “mailing” for mail fraud. 347 U.S. 1, 8, 74 S.Ct. 358, 98 L.Ed. 435 (1954). Pereira convinced a wealthy widow to write him a check for fake investments. Her check was written against a California bank, and he tried to cash it in Texas. The Texas bank mailed the check to the California bank in the normal course of redeeming an out-of-state check. That mailing, from one bank to another in the normal course of cashing the check, served as the basis for a mail fraud conviction though the actual fraud took place in a face-to-face confrontation.
At the close of the State’s evidence, the Defendant moved to dismiss the 18 communication counts where the victims did not testify. He argued that at least one end of the communication was necessary to show the fraud within the communications.
*815 The State argued in response that it did not have to show that each communication was fraudulent; just that there was a scheme to defraud and communication in furtherance of the scheme with the intent to obtain property. The State used the Defendant’s own tracking of client communications to establish the communication in furtherance of the scheme for the 18 counts where a victim did not testify. The State’s evidence in eight of the 18 counts were copies of purchase orders and shipping logs for the machines. These copies showed the dates that the machines were shipped and have the signature of the victims on the purchase orders for the machines. The State also had snack orders for nontestifying victims in those same eight counts plus eight other counts. The snack orders noted when the snacks were ordered, when they were shipped and the amount shipped. The Defendant did not object to those exhibits. The State’s evidence as to the remaining two counts were in “sales books.” The sales books had the customer name, the corresponding salesperson, the number of units sold and the payment amount received. From the transcript, the sales books appeared to be the salespeople’s total sales per month, not lists of individual communications.
We affirm the 16 communications fraud counts where the State entered actual purchase orders of machines or snacks. The orders and shipment records documented precise dates of communication. Testimony of office practice combined with the business records submitted established a rebuttable presumption that the mailings and phone conversations occurred as recorded. See Brake v. State, 473 So.2d 774 (Fla. 3d DCA 1985). The presumption was unrebutted by the defense. However, because the sales books did not appear to document any particular communications, we reverse the two counts of communication fraud where the sales books were the only evidence. From the record, these appear to be Counts 37 and 39.
Under federal and Florida precedent, an instance of a shipment or purchase order going through the mail or taken over the telephone appears to be enough to establish the communication for communications fraud. Under Pereira, even the customers actually mailing or wiring the payment in return for the machines would satisfy the communication required for communications fraud. See § 817.034(3)(d), Fla. Stat. (1999). The overall scheme to defraud was the advertisement that falsely held out the vending machine business to be through established routes where other investors already were making money, then referring customers to singers who proclaimed high returns. At least one singer testified he didn’t have any machines out at all. Though the communications’ content was unknown, the bookkeeper’s testimony established that the communications were in “furtherance of the scheme” and were made with the intent of obtaining property. Actually, in most cases, the State was able to present a copy of the checks with the date received, which was the property actually obtained.
We express concern with the employment of the communications fraud statute, because its breadth has the potential for ensnaring simply borderline unethical business practices. However, we agree with the second district’s analysis:
The “concern naturally arises that the criminal law will be used to hold businessmen to the maximum, rather than the minimum, standards of ethical behavior.” Be that as it may, we cannot override or ignore the legislature’s determination to create the Act and to provide the standard by which it is to be effectuated. Our uneasiness, no different from that expressed by others in *816 this field, is tempered by the good faith and judgment of those charged with the responsibility to carry out Florida’s regulation of criminal activities. The judiciary, of course, furnishes the oversight capable of remedying abuse.
591 So.2d at 964 (citations omitted).
Like the second district, we find that the record supports the communications fraud convictions where the State had business record evidence of communication. However, we reverse the two communication fraud counts where the evidence, as shown in the transcript, did not provide evidence of any particular instance of communication.
In conclusion, the use of fictitious references to hold out that the vending machine investment was an established, lucrative enterprise combined with the use of the mail to communicate and receive payment seems exactly the type of practice the communications fraud statute was designed to punish.
REVERSED IN PART, AFFIRMED IN PART.
GUNTHER, FARMER and MAY, JJ., concur.