CHRISTEN, Circuit Judge,
concurring:
I concur with the majority opinion. I write separately to emphasize the attribute of Jinian’s fraudulent scheme that'is fatal to his argument that his crime was complete upon the deposit of each check into his account at Mechanics Bank.
When a perpetrator — like Jinian — conceives of an ongoing scheme to defraud, he is necessarily concerned with which party ultimately bears the loss; indeed, his ability to continue the scheme depends upon it. See Schmuck v. United States, 489 U.S. 705, 714, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). In contrast, one-time fraudsters are indifferent to who pays for their crimes, because they do not need to leave one party whole in order to avoid detection and swindle again. See Kann v. United States, 323 U.S. 88, 93-94, 65 S.Ct. 148, 89 L.Ed. 88 (1944). The Schmuck and Kann cases illustrate that when a perpetrator is indifferent to the ability to repeat the fraudulent scheme, the use of mail or wires after money or services are obtained cannot be “for the purpose of executing [that] scheme.” See 18 U.S.C. § 1343. For federal wire fraud, the point at which this type of transaction is deemed “completed” is illustrated by comparing the facts in Schmuck with the facts in Kann.
Schmuck involved an “ongoing fraudulent venture”: an automobile distributor turned back the odometers on used cars before selling them to unsuspecting dealers. The dealers resold the cars to consumers at inflated prices, using the mail to transfer title to their customers. 489 U.S. at 707, 109 S.Ct. 1443. Schmuck argued that his crimes were completed once he collected his money from the dealers, which was before the mail was used to transfer the titles. Id. at 707-08, 109 S.Ct. 1443. But the Court explained that Schmuck fell within the bounds of the federal mail fraud statute because the scheme Schmuck envisioned required that the dealers could successfully re-sell the used cars and transfer titles to the new owners. Id. at 712, 109 S.Ct. 1443. If the dealers had been unable to do so, they surely would not have agreed to continue doing business with Schmuck and his scheme likely would have been discovered. Id. at 714, 109 S.Ct. 1443.
In contrast, the federal prohibition on mail fraud was not triggered in the one-off scheme that took place in Kann. There, businessmen cashed or deposited fraudulently obtained checks and moved on, unconcerned about whether the drawee banks reimbursed the payee banks. See 323 U.S. at 94, 65 S.Ct. 148. The Kann crimes were completed when the businessmen deposited or cashed their checks because the scheme they envisioned did not depend on who ultimately bore the loss. Id. The Court reached the same result in Parr v. United States, 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960), where two fraudsters used a school district credit card to buy gasoline and other services from a filling station. Each fraudulent transaction was completed long before the credit card bill was mailed to the school district for payment. See id. at 392-93, 80 S.Ct. 1171. The Parr Court explained that it “was immaterial to [the perpetrators], or to any consummation of the scheme, how the [oil company] ... would collect from the [District].” Id. at 393, 80 S.Ct. 1171 *1270 (quoting Kann, 323 U.S. at 94, 65 S.Ct. 148) (first alternation added, the remainder in Parr).
Jinian convinced an employee at Bric-snet that he had permission to receive funds in excess of his regular compensation. He obtained checks through this misrepresentation and deposited them into his account at Mechanics Bank. The ability to perpetuate his scam depended on his employer, not Mechanics Bank, bearing the loss. If Mechanics Bank had credited Jinian’s account for any one of his fraudulently-obtained checks and the check had subsequently failed to clear Silicon Valley Bank (Bricsnet’s bank), Mechanics Bank would have sustained the loss, and Jinian would have “jeopardized [his] relationship of trust and goodwill” with Mechanics Bank. Schmuck, 489 U.S. at 714, 109 S.Ct. 1443. No doubt additional questions would have been asked that would have risked disclosure of Jinian’s fraudulent operation. Because the ongoing nature of Jinian’s scheme depended on every check clearing (so that Bricsnet bore the loss rather than Mechanics Bank), wiring the image of every check to the Federal Reserve in Dallas was “part of the execution of the scheme as conceived by [Jinian].” Id. at 715, 109 S.Ct. 1443.
The majority and the district court rely on United States v. Franks, 309 F.3d 977, 978 (7th Cir.2002), to conclude that Jinian’s fraudulent transactions were not complete until the deposited checks cleared because the funds “were not irrevocably in his possession” until that time. Majority at 1264. Franks stated that the deposit of fraudulently obtained checks should not determine the “completion” of a similar scheme to defraud because the adoption of the Uniform Commercial Code (after Kann was decided) made it easier for banks to recall deposited funds when checks fail to clear. Id. I agree with the conclusion that Jinian’s transactions were not complete until clearance, but not because the funds were not irrevocably his before that time.
First, the record does not support the majority’s statement that Jinian’s funds were “subject to hold or cancellation” by Mechanics Bank until after the images of the checks were wired to the Federal Reserve. Majority at 1264. No testimony was offered from employees at Mechanics Bank to establish when deposited funds were credited to customers’ accounts and made available to them to withdraw. It is easy to envision that a bank customer like Jinian, with a large account balance and an active account, may have been given the courtesy of having access to funds in his account before the checks cleared via wire transfer to the Federal Reserve. Without knowing the specifics of Mechanics Bank’s policies, we cannot know whether Mechanics Bank would have been able to recall, and thereby recover, Jinian’s ill-gotten checks. Without this evidence, reliance on the reasoning in Franks is misplaced.
More to the point, the result of Jinian’s case would not change even if Jinian had cashed the checks at Mechanics Bank, rather than depositing them, because Schmuck does not focus on retrievability. Schmuck instructs that the dispositive fact in wire and mail fraud cases such as this one is whether the fraud “as conceived by the perpetrator at the time” was complete before the intended victim suffered a loss. 489 U.S. at 715, 109 S.Ct. 1443 (emphasis added). When the identity of the ultimate victim matters to the perpetrator’s ability to repeat an ongoing scheme, the crime is not complete until the intended victim is swindled. Here, the wires to the Federal Reserve were “incident to an essential part of [Jinian’s] scheme” because the wires— not Jinian’s deposits to Mechanics Bank— ensured that it was Bricsnet’s funds that were fraudulently obtained. See Pereira *1271 v. United States, 347 U.S. 1, 8, 74 S.Ct. 358, 98 L.Ed. 435 (1954).