UNITED STATES of America, Plaintiff,

v.

**William H. FELLUS, Defendant.**

**No. 83 Crim. 413 (WCC).**

United States District Court,
S.D. New York.

Oct. 26, 1983.

As Amended Oct. 28, 1983.

See also 695 F.2d 459.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for plaintiff; Pamela Rogers Chepiga, Chief, Securities & Commodity Frauds Unit, New York City, of counsel.

Jeffrey L. Bragman, New York City, for defendant.

## OPINION AND ORDER

CONNER, District Judge:

Defendant William Fellus ("Fellus") appeared before this Court on June 23, 1983 and entered a plea of guilty to two counts of mail fraud. Shortly before his scheduled sentencing, he moved to withdraw that plea on the grounds that it was the result of coercion and that an insufficient factual basis for the plea had been established at his allocution. For the reasons set forth below, defendant's motion is denied and his sentencing will proceed.

Fellus was arrested in May 1983 and charged by means of a criminal information with mail fraud. The information alleged that he and another individual, Shuky Mishrick ("Mishrick"), both of whom had been hired to operate a "twenty-four hour desk" for the brokerage firm of Dean Witter Reynolds ("Dean Witter"), devised and executed a scheme to enrich themselves by trading as undisclosed principals in an account they fraudulently represented to be a non-discretionary customer account, and by using Dean Witter funds to engage in unauthorized speculative trading which was deliberately concealed from Dean Witter. The information further alleged that

Fellus and Mishrick transferred their illegal profits into foreign bank accounts and caused the mail delivery of certain contracts for the purchase of silver. All of these acts were said to have been committed wilfully, knowingly and in violation of a fiduciary duty owed to Dean Witter.

Shortly after Fellus's arrest, Dean Witter commenced an action against him in state court to recover the money he had wrongfully appropriated. Dean Witter obtained an *ex parte* order of attachment against his assets, including the contents of his known domestic and foreign bank accounts. As a result, Fellus was unable to post the $200,000 cash bail set at his arraignment, and he remained in custody.

At the hearing held by this Court on June 23, Fellus sought to waive indictment and enter a plea of guilty to the mail fraud charges. He was represented by Jeffrey Ressler, Esq. ("Ressler"); also present were an Assistant United States Attorney and counsel for Dean Witter. Before accepting the plea, the Court asked Fellus a number of questions designed to ascertain whether his decision to plead guilty was made freely and voluntarily. When asked whether any pressure had been brought to bear upon him, Fellus replied, "No, sir." (Def's Ex. E, p. 6).[1] He then provided the Court with many of the details of the fraudulent scheme.

Fellus and his attorney explained that an individual named Nessim Yaffe ("Yaffe") had given Fellus and Mishrick permission to open an account with Dean Witter and to trade under his name.[2] According to their agreement, Fellus would receive 65% of the profits generated through this account, Mishrick would receive 25%, and Yaffe 10%. (Def's Ex. E, p. 11). Approximately $1.9 million was subsequently transferred by wire into numbered bank accounts in Switzerland and Luxembourg for ultimate distribution among the three men. (Def's Ex. E, pp. 13–14).

The Court asked Fellus whether he did, "through the use of Dean Witter funds, without authority and in secret, assume a net short position in silver in the amount of 7.3 million ounces, ... which short position was nowhere recorded in the books and records of Dean Witter and which was deliberately concealed." Fellus replied, "Yes." (Def's Ex. E, p. 16). When the Court inquired further as to how this was accomplished, Fellus indicated that he had called other dealers and, in the name of Dean Witter, made short sales by means of forward-dated contracts. Ressler explained that, under the plan, profits and losses were not to be placed against any particular account. At the end of each trading day, Fellus would then have the option of assigning them either to the Yaffe account or to Dean Witter. The scheme went awry, according to Ressler, when the market turned against the positions established by Fellus and Mishrick, and the two attempted to compensate by rolling over their unrecorded trades. By the time Dean Witter discovered their activity and fired them, it had suffered losses of approximately $14 million. Fellus was asked whether he understood his attorney's explanation and whether it was correct. He responded "Yes." (Def's Ex. E, p. 19).

Ressler also indicated that at some point prior to their detection, Fellus and Mishrick had agreed that Mishrick would handle the silver contracts, as this was his area of expertise. Therefore, Fellus did not actually handle the contracts which formed the basis of the mail fraud charges against him. Nonetheless, when asked by the Court whether he knew the contracts had been entered into, and that documents reflecting the transactions would be mailed, Fellus replied, "Yes, sir." (Def's Ex. E, p. 20).

Following this discussion, Dean Witter's counsel passed a note to the Government's attorney, prompting the prosecutor to in-

---

**1.** Defendant's Exhibit E is the transcript of the plea allocution.

**2.** Fellus executed the documents necessary to open the account (Def's Ex. E, p. 12), and the address he provided for Nessim Yaffe was actually that of his own mother.

quire whether the Court wished to elicit the method by which defendant's trades were hidden from Dean Witter. Ressler observed this communication between Dean Witter and the Government and brought it to the Court's attention. He indicated that although his client was prepared to make such a disclosure if the Court required it, the information was more appropriately a subject for discussion in the civil action pending against Fellus in state court. The Court agreed that the information was unnecessary for purposes of establishing a factual basis for the guilty plea, and accepted Fellus's plea to both counts.

Ressler then made an application for a reduction in bail. During the ensuing discussion, Ressler detailed the extent of Fellus's cooperation throughout the plea negotiation process, and stated with regard to Fellus's foreign bank accounts, "I indicated to the government that Mr. Fellus is prepared to execute waivers of secrecy on behalf of the government so that they can ascertain whether or not any other funds are available." (Def's Ex. E, p. 25). When the Government opposed a bail reduction on grounds that Fellus might have additional money secreted away, Ressler reiterated his client's willingness to execute waivers of secrecy. The Court declined to reduce defendant's bail, and the hearing concluded.

Shortly before the scheduled sentencing in this matter, the prosecutor received a telephone call from an attorney who said he was considering entering the case on behalf of Fellus. He wanted the Government to consent to withdrawal of Fellus's guilty plea on one of the two counts in exchange for execution of the secrecy waivers promised earlier. Counsel for the Government rejected this proposal and a few days later, the instant motion was filed by Jeffrey Bragman, Esq. ("Bragman").

The standard for permitting withdrawal of a guilty plea prior to sentencing is a liberal one, but the defendant has the burden of satisfying the trial judge that there are valid grounds for withdrawal. The trial judge's determination as to whether a defendant has met that burden is reversible only if clearly erroneous. *United States v. Michaelson*, 552 F.2d 472 (2d Cir.1977). Defendant contends here that his plea was not the product of a free and voluntary choice, but was rather the result of an "inherently coercive" atmosphere created by undue cooperation between the Government and Dean Witter. (Bragman Aff. at ¶ 33). He also asserts that an insufficient factual basis was established at the June 23 hearing. Based upon written submissions and the oral presentations of counsel, I must conclude that these claims are without merit and that the motion should be denied.

Bragman's affidavit in support of the motion contains various assertions of improper involvement by Dean Witter in Fellus's prosecution. He alleges that "the office of the United States Attorney and counsel for the alleged victim 'whipsawed' the defendant between two pending litigations, each for the benefit of the other." (Bragman Aff. at ¶ 19). He states further that the Government participated in a course of conduct "orchestrated by counsel for Dean Witter, which coercively pressured the defendant into pleading guilty in the criminal action, thereby concomitantly providing an advantage to Dean Witter Reynolds in the pending civil action." (Bragman Aff. at ¶ 20). In support of these claims, counsel has directed the Court's attention to various incidents which he believes evince this improper cooperation, some of which occurred before the plea was entered, and some of which occurred after.

■ Before discussing these incidents, I note that statements made by a defendant at the time of his guilty plea carry "a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977). When asked at the plea hearing whether any pressure had been brought to bear upon him, Fellus responded negatively, and without qualification. In addition, although Fellus submitted an affidavit in support of the present motion, he addressed only the suf-

ficiency of the factual basis for the plea; he did not state that Dean Witter's cooperation with the Government in any way affected his decision to plead guilty. Thus, in determining whether the incidents cited by counsel did indeed give rise to an "inherently coercive atmosphere" which caused Fellus to plead guilty, the Court is forced to rely on counsel's conclusory assessment of his client's state of mind. That assessment is weakened by the fact that Fellus's present attorney did not represent him at the plea hearing, and was therefore unable to perceive the "atmosphere" first hand.

■ With regard to alleged incidents of improper cooperation that occurred after entry of the plea, I can only reiterate here the view I expressed at an earlier hearing in this matter: It is logically impossible for events that occurred after Fellus entered his guilty plea to have had any coercive impact whatever. I recognize that these incidents may tend to illustrate the nature of the relationship that existed between Dean Witter and the Government prior to the plea; however, the issue here is what Fellus believed that relationship to be at the time he decided to plead guilty. Subsequent events could not conceivably have affected his belief, and are therefore irrelevant to the present consideration.[3]

■ Turning next to the incidents of cooperation between Dean Witter and the Government prior to and during the plea hearing, I remain unconvinced that such cooperation was improper, or that it created the sort of coercive atmosphere described by defendant's counsel. As I stated during arguments on this motion, I do not think it was at all improper for the Government to cooperate with Dean Witter by providing information relevant to the civil action, or for Dean Witter's counsel to be present at the various hearings in this matter. Dean Witter was quite naturally interested in keeping abreast of developments and providing any possible assistance in the criminal prosecution. To be sure, Dean Witter undertook these tasks with great vigor; nonetheless, the record does not support defendant's contention that Dean Witter overreached or "orchestrated" the prosecution in order to gain an advantage in the civil proceeding.

Defendant has attached great significance to the fact that Dean Witter's attorney handed a note to the prosecutor near the conclusion of the plea allocution. While this incident may establish that the two parties were working closely, it hardly establishes that Dean Witter's representative was present "as active counsel directing the factual inquiry of the assistant U.S. Attorney and the Court." (Bragman Aff. at ¶ 21). The real significance of this incident lies in its tendency to demonstrate that when Ressler felt Dean Witter was overreaching, he was not at all bashful about speaking up and placing his objections on the record. If he had believed his client's plea was coerced, surely he would not have permitted the hearing to proceed.

■ The defendant's attempt to portray himself as the victim of some sinister combination of powerful forces is unavailing at best. Fellus knew that the Government had gathered a substantial amount of evidence against him and that Mishrick had entered a guilty plea and offered full cooperation. The transcript of the plea allocution also reveals that Fellus and his attor-

---

**3.** Defendant's contention that the Government expressed little interest in obtaining waivers of secrecy until prompted by Dean Witter is flatly contradicted by the record. As indicated in the text above, defendant assured the Government prior to and during the plea hearing that he would execute such waivers. In addition, one of defendant's own exhibits, a letter from the Assistant United States Attorney to Ressler, clearly sets forth the Government's willingness to limit the use of these waivers to the criminal proceeding. (Def's Ex. I).

If, following entry of the plea, counsel for Dean Witter did in fact threaten to take some action in the criminal proceeding in order to gain an advantage in its civil proceeding, defendant's remedy, if one exists, is in the institution of disciplinary proceedings. If there is any remedy for the other alleged incidents of undue cooperation, that remedy must be sought in the context of the civil action.

ney had discussed the matter extensively with counsel for the Government. In short, Fellus knew that he was guilty, he made a perfectly realistic assessment of the strength of the case against him, and he recognized he had nothing to gain by putting the Government to its proof. His plea was unquestionably the result of a voluntary choice and a careful balancing of available options.[4] Permission to withdraw that plea on grounds of coercion will therefore be denied.

Turning next to defendant's contention that the Court failed to establish an adequate factual basis for entry of the plea, the Court remains convinced that the statements elicited from defendant and his counsel were more than sufficient to justify acceptance of his plea. Fellus's present position that he did not understand the criminal acts and intent required to sustain the mail fraud charges, and that his ambiguous responses to certain inquiries amounted to protestations of innocence, can only be viewed as disingenuous.

 To establish a mail fraud violation, the Government must show the existence of a scheme which was devised with the specific intent to defraud, and the use of the mails in furtherance of that scheme. *Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954); *United States v. Von Barta*, 635 F.2d 999, 1005 n. 14 (2d Cir.1980), *cert. denied*, 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981). Facts sufficient to satisfy both of these elements were elicited at the allocution.

Fellus admitted that he opened an account in Yaffe's name, that he traded in that account as an undisclosed principal, and that he arranged for transfer of the profits into numbered foreign bank accounts for his own use. He acknowledged that he acted "without authority" in using Dean Witter funds to assume a net short position which he then "deliberately concealed" from the company. With defendant's own statements, and his assent to the explanations of his counsel, the fraudulent scheme was adequately established.

In support of his present contention that statements he made during the plea allocution amounted to denials, defendant has seized upon his testimony that it was "standard operating procedure" for Dean Witter's account executives to take short positions on behalf of clients. This emphasis misses the mark entirely. Whatever explicit or implicit policy existed at Dean Witter, that policy did not provide for the continued rolling over of losing positions established in Dean Witter's name, or the deliberate concealment of such activity from the company. Fellus's response to these allegations was inculpatory and unequivocal.

Fellus has directed the Court's attention to his statement that the account he established in Yaffe's name was discretionary rather than nondiscretionary, but he has failed to explain the significance of this distinction. Similarly, he has indicated that there is a difference between regulated and unregulated markets, and has vaguely hypothesized that his conduct might be legal if it occurred in one market rather than the other, but he has provided no further explanation or argument. He did not contend during the plea allocution, and he does not contend now, that this distinction bears any actual significance to the facts of this case. Therefore, there is no basis upon which the Court could possibly conclude that Fellus's conduct was anything but fraudulent.

The essence of the charge against Fellus was that he traded as an undisclosed principal and then secreted the profits and evidence of his trades, in violation of a fiduciary duty owed to Dean Witter. With regard to these allegations, Fellus's intent

---

4. Defendant has suggested that Dean Witter's conduct and the pendency of these criminal and civil proceedings were responsible for his mother's ill health and ultimate demise, his son's employment termination, and his own financial hardship. While these conditions undoubtedly caused Fellus great concern, he has not shown that they were the result of Dean Witter's overreaching, nor has he shown that they had an undue impact on his decision to enter a guilty plea.

was clear and he made no protestations of innocence.[5]

With regard to his use of the mails, the second essential element of the mail fraud charge, defendant suggests that the record fails adequately to establish his liability. In support of this argument, defendant relies on statements that Mishrick handled the silver contracts underlying the mail fraud charges, and that Fellus was not aware of the mailing dates. A review of the applicable law reveals that a satisfactory basis for imposing liability on Fellus does indeed exist.

■■■ Liability for mail fraud attaches when an individual performs an act "with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen ...." *Pereira, supra,* 347 U.S. at 8–9, 74 S.Ct. at 362–363. Where a scheme involving two or more persons is alleged, the admissibility of evidence is determined under the same rule applied to conspiracies: "The acts and declarations of each party to the scheme made in furtherance or execution thereof are admissible against all." *United States v. Amrep,* 560 F.2d 539, 545 (2d Cir.1977), *cert. denied,* 434 U.S. 1015, 98 S.Ct. 731, 54 L.Ed.2d 759 (1978). Thus, "so long as a transaction is within the general scope of a scheme on which all defendants had embarked, a defendant not directly connected with a particular fraudulent act is nonetheless responsible therefor if it was of the kind as to which all parties had agreed." *Id.* (citations omitted).

■■■ During the allocution in this case, Fellus admitted that he and Mishrick had devised a fraudulent scheme, but he denied any direct knowledge of the dates on which the underlying silver contracts were mailed. Fellus's attorney then provided the following explanation:

Mr. Fellus' expertise lay in the field of foreign exchange and Mr. Mishrick in the field of precious metals, so that on April 28, I believe it is—at the time it was 6.3 million silver position short and [the trading] was taken over by Mr. Mishrick for purposes of being able to expedite and cover. So the actual mailings on May 13, 1983 he is not specifically aware of, but he participated with Mr. Mishrick, and I explained the laws of conspiracy and when I explained that, he indicated obviously he is guilty.

(Def's Ex. E, p. 20). The Court asked the defendant whether he knew the contracts had been entered into, and whether he knew they were going to be mailed even though he did not know the specific dates. Fellus replied, "Yes, sir." On the basis of this response, there is a sufficient basis for imposing upon Fellus liability for the act of his co-schemer.

■■■ At the time of the plea allocution, Fellus was a sophisticated, well-educated individual with considerable experience as an account executive. He was familiar with the mechanics and the terminology of commodities trading. Despite his present attempts to color the alleged fraud as a complex scheme which even the prosecution could not fully comprehend, the allegations essential to establishing his liability were presented to Fellus simply and precisely, and his responsive admissions were clear and unqualified. Present counsel may well believe that further details could have been produced. However, the transcript demonstrates that the Court and defense counsel elicited from defendant an admission of all the essential elements of the offenses charged; nothing more was required.

The instant motion, which was filed immediately after the Government refused to consent to withdrawal of the guilty plea to one of the two counts, can only be viewed as Fellus's last-minute attempt to avoid responsibility and punishment for his criminal conduct. For this reason, the Court restates today its conclusion of June 23,

---

**5.** The unsupported conclusion that the facts elicited failed to establish Fellus's intent to commit the offenses charged seems particularly inappropriate in light of the fact that Fellus's prior attorney sought to protect his client's interests by keeping off the record an explanation of precisely how the illegal trades were concealed from Dean Witter.

1983, that a sufficient factual basis was established to justify acceptance of the plea, and that the plea was freely and voluntarily entered. The defendant's motion is therefore denied, and his sentencing will proceed on Wednesday, November 9, 1983, at 9:30 A.M., in Courtroom 618.

SO ORDERED.