**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Richard VITRANO, a/k/a Richard Ruben, Defendant-Appellant.**

**No. 83–3474.**

United States Court of Appeals, Eleventh Circuit.

Nov. 15, 1984.

Rehearing and Rehearing En Banc Denied Jan. 15, 1985.

---

Claude H. Tison, Jr., MacFarlane, Ferguson, Allison & Kelly, Tampa, Fla., for defendant-appellant.

Judy S. Hoyer, Asst. U.S. Atty., Tampa, Fla., for plaintiff-appellee.

Before KRAVITCH and HATCHETT, Circuit Judges, and HANCOCK *, District Judge.

HATCHETT, Circuit Judge:

Appellant, Richard Vitrano, appeals his convictions on eight counts of mail fraud in violation of 18 U.S.C.A. §§ 1341 and 1342 (West Supp.1984).[1] We affirm in part and reverse in part.

---

* Honorable James H. Hancock, U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. Title 18 U.S.C.A. § 1341 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, ex-change, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or deliv-

On June 26, 1978, Vitrano, doing business as Quality Fine Art Investment, initiated his mail fraud scheme by mailing a letter to Anthony Schmidt, an art dealer, inquiring about certain paintings Schmidt had for sale. On July 5, 1978, Vitrano mailed another letter to Schmidt requesting certain paintings costing $6,650. Schmidt shipped the paintings to Vitrano in Tampa, Florida, but never received payment.

On July 12, 1978, Vitrano mailed a letter to Barbara Clem, a California art dealer, requesting Clem to send him price quotes and photographs for specific paintings. Subsequently, on July 21, Vitrano attempted to sell Clem paintings at a discounted price. On July 27, Clem responded to Vitrano's offer by mailing him price lists and photographs of the paintings Vitrano requested, but declined to purchase any of Vitrano's paintings. Clem also mailed a William Wendt painting entitled "Seascape," priced at $3,000, to Vitrano. Vitrano never paid for the painting.

In July, 1978, Vitrano mailed a letter to Lynn St. Albus, an Illinois art dealer, offering to sell at a discounted price the four paintings he had obtained from Schmidt. Albus refused the offer. In September, 1978, Vitrano's secretary, Kathy Parks, using an alias, Roberta Mason, mailed a letter to Leonard Stark, an Illinois art dealer, offering to sell two paintings Vitrano had acquired from Schmidt and the painting Vitrano had obtained from Clem. Stark agreed to buy the Clem painting for $1,500, one-half the amount Vitrano owed Clem on the same Wendt painting. Parks, therefore, mailed Stark the painting. Stark, however, in cooperation with postal authorities, informed Parks that he was returning the painting, and prepared a false package to mail to Tampa. Postal authorities arrested Parks as she arrived to pick up the package.

A grand jury indicted Vitrano on eight counts of mail fraud, and a jury convicted him on all eight counts. He appeals raising three issues: (1) whether sufficient evidence exists to support his conviction on each count; (2) whether the district court erred in admitting evidence of "similar acts;" and (3) whether the discovery of new evidence merits a new trial.

"A conviction for mail fraud ... requires proof of: (1) the defendant's participation in a scheme to defraud; (2) use of the mails to implement the scheme; and (3) that a person connected with the scheme used or 'caused' the use of the mails." *United States v. Hartley*, 678 F.2d 961, 985 (11th Cir.1982), *cert. denied*, 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983); *United States v. Bethea*, 672 F.2d 407, 410 (5th Cir. Unit B 1982); *United States v. Rodgers*, 624 F.2d 1303, 1306–07 (5th Cir.1980), *cert. denied*, 450 U.S. 917, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981). *See also Pereira v. United States*, 347 U.S. 1, 7–9, 74 S.Ct. 358, 362–363, 98 L.Ed. 435 (1954). Vitrano contends that insufficient evidence exists to prove the requisite elements of mail fraud on each of the eight counts. We disagree except as to Count VI; because of insufficient evidence, we reverse Vitrano's conviction on Count VI.

■ Count I charges that Vitrano devised a scheme to defraud buyers and sellers of paintings, and to accomplish his scheme, Vitrano mailed a letter to Schmidt

ered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

Title 18 U.S.C.A. § 1342 provides:

Whoever, for the purpose of conducting, promoting, or carrying on by means of the Postal Service, any scheme or device mentioned in section 1341 of this title or any other unlawful business, uses or assumes or requests to be addressed by, any fictitious, false, or assumed title, name, or address or name other than his own proper name, or takes or receives from any post office or authorized depository of mail matter, any letter, postal card, package, or other mail matter addressed to any such fictitious, false, or assumed title, name, or address, or name other than his own proper name, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

announcing Vitrano's interest in acquiring paintings. The evidence reveals a scheme whereby Vitrano would obtain paintings with no intention of compensating the owners. Vitrano's sale of the paintings at a discounted price reflects his intention to avoid paying the owners because he could not pay full price by selling the paintings at a reduced price. The June 26 letter from Vitrano to Schmidt constituted an integral part of Vitrano's scheme. Because of the June 26 letter expressing his interest in Schmidt's paintings, Vitrano mailed another letter on July 5, 1978, resulting in his obtaining paintings from Schmidt; these paintings were never paid for, but they were offered for sale at discounted prices. Vitrano was the chief participant in the mail fraud scheme; he used the mails to implement his scheme by mailing the June 26 letter; and he caused the use of the mails. Sufficient evidence exists to support Vitrano's conviction on Count I.

Count II incorporates the allegations in Count I and also charges Vitrano with attempting to accomplish his scheme by his July 5 letter ordering five paintings from Schmidt. Again, the evidence indicates that the elements necessary to convict Vitrano of mail fraud exist in Count II. By his July 5 letter, Vitrano utilized the mails to implement his scheme, and he also caused the use of the mails. The evidence is sufficient for conviction on Count II.

Counts III and IV charge Vitrano with attempting to effectuate his scheme by mailing letters to Clem inquiring about purchasing and selling paintings. The three elements necessary to support a mail fraud conviction exist for this count. By sending these letters to Clem, Vitrano utilized the mails to effectuate his plan. Without the letters, Vitrano could not have acquired the Wendt painting which he never intended to pay for and which he offered for sale at a reduced price. Vitrano was the chief participant in the scheme, and his July 5 letter caused a use of the mails. The evidence is sufficient for conviction on Counts III and IV.

Count V charges that Vitrano, in attempting to carry out his scheme, mailed a letter to an art dealer in Chicago inquiring whether the art dealer would purchase the paintings Vitrano had acquired from Schmidt. This letter was another method Vitrano utilized to execute his scheme. He attempted to sell the paintings to the Chicago art dealer at a discount, and therefore, he could never have paid Schmidt the agreed-upon price. The letter to the Chicago art dealer was a use of the mails to implement a fraudulent plan by the chief participant who caused the use of the mails. The evidence is sufficient for conviction on Count V.

■ Count VI charges that Vitrano, in attempting to implement his scheme, received the Wendt painting by mail. The record fails to reveal that Vitrano caused the use of the mails, that is, Vitrano never requested Clem to ship the painting to him. The evidence is insufficient for conviction on Count VI.

Count VII charges that Vitrano, for the purpose of executing his scheme, aided and abetted his secretary, Kathy Jane Parks, in mailing a letter offering to sell three paintings to Stark. These offers to sell were at a discounted price, and therefore, Vitrano could never have paid the original owner the agreed-upon compensation. This letter constituted part of the scheme to defraud the original owner of the artwork. The elements necessary to convict on mail fraud charges exist, and therefore, we find the evidence sufficient for Vitrano's conviction on Count VII.

Count VIII charges that Vitrano, attempting to execute his scheme, aided and abetted Kathy Jane Parks in using a fictitious name, Roberta Mason, in violation of Title 18 U.S.C.A. § 1342 (West Supp.1984). The evidence indicates that Parks aided Vitrano in his scheme to defraud, and Vitrano ordered Parks to use a fictitious name when she was working for him in attempting to obtain paintings without compensating the original owner. Parks testified that while she was aiding Vitrano in his illegal enterprise, she used a ficti-

tious name which Vitrano suggested. Sufficient evidence exists to support the conviction on Count VIII.

Vitrano also contends that the district court erred in admitting "similar act" evidence. After Vitrano attempted to persuade the jury that another person, Charles Heller, had devised the scheme to defraud, the government presented its rebuttal case consisting of two "similar acts" of fraud in the art business. First, the government produced Archie Wilson, a controller at an art auction, to testify that Vitrano had never paid for artwork purchased at his auction. Second, the government proffered the testimony of Thomas Baird, a private art dealer, who testified that he refused to send paintings Vitrano requested because of Vitrano's unsatisfactory credit references. Baird also testified that Vitrano tendered a check for the paintings, but after investigating Vitrano's account because of what he learned, he refused to send the paintings to Vitrano.

In *United States v. Beechum*, 582 F.2d 898 (5th Cir.1978), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979), the Fifth Circuit articulated the analysis to determine when extrinsic offense evidence is admissible. "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403." *Beechum*, 582 F.2d at 911 (footnotes omitted).

■ Applying the *Beechum* test in this case, the district court determined that the evidence Wilson and Baird proffered was relevant to Vitrano's intent, and the probative value of the evidence outweighed its prejudicial value. The problem inherent in the district court's analysis concerning Wilson's testimony is that Wilson could not clearly identify Vitrano as the person who purchased the paintings. Wilson's identification of Vitrano was confusing. An extrinsic offense relevant to the issue of intent "is valid only if an offense was in fact committed and the defendant in fact committed it." *Beechum*, 582 F.2d at 912. Wilson could not identify Vitrano as the person who purchased the paintings, and therefore, his testimony should not have been admitted; however, in light of the overwhelming evidence against Vitrano, the admission of Wilson's testimony did not result in substantial prejudice to Vitrano. *King v. Gulf Oil Co.*, 581 F.2d 1184, 1186 (5th Cir.1978).

■ The district court, however, did not err in admitting Baird's testimony concerning Vitrano's attempt to purchase artwork from him because the probative value of Baird's testimony outweighs its prejudicial effect. The testimony relates to an issue other than Vitrano's character; it pertains to Vitrano's intent to purchase artwork from owners without compensating them.

■ Finally, Vitrano argues that newly discovered evidence merits a new trial. Vitrano proffers new evidence disclosing that it was Charles Heller that presented a letter of credit to Wilson in the name of Richard Vitrano. The new evidence fails to warrant a new trial because the sole purpose of the newly discovered evidence was to impeach Wilson's attempted identification of Vitrano as the person purchasing artwork at the auction. Newly discovered impeaching evidence is insufficient to warrant a new trial. *United States v. Johnson*, 596 F.2d 147, 148 (5th Cir.1979); *United States v. Slocum*, 708 F.2d 587 (11th Cir.1983). Since the newly discovered evidence goes solely to impeachment, Vitrano is not entitled to a new trial.

AFFIRMED IN PART AND REVERSED IN PART.