900 F.2d 260
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Carol Levasseur MESSER, Defendant-Appellant.
 No. 89-3433.
 United States Court of Appeals, Sixth Circuit.
 April 16, 1990.
 
 Before KEITH and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Carol Levasseur Messer appeals the district court's denial of her motion for judgment of acquittal on charges of aiding and abetting mail fraud.
 
 I.
 
 2
 Wesley Proctor, the appellant's uncle, devised a scheme to defraud various credit card and airline companies to obtain money, goods, and services. Proctor, using fictitious names, submitted credit card applications to various companies including Citicorp Diners Club, Standard Oil, Amoco, American Express, Mobil Oil, and Gulf Oil. The credit card applications listed fictitious employment and credit histories thereby creating a false credit profile of the fictitious applicants. A fictitious company name, Auto Traders, Inc., was listed as the employer on most of the applications.
 
 
 3
 Numerous credit cards were issued to these fictitious applicants pursuant to the fraudulent credit card applications. For example, the following credit cards were issued and mailed:
 
 
 4
 CREDIT CARD FICTITIOUS CARDHOLDER DATE MAILED
1. Standard Oil Co. Carroll Macklin 8/23/83
2. Standard Oil Co. William H. Grondin 8/23/83
3. Citicorp Diners Club Herbert T. Proctor 9/15/83
4. Citicorp Diners Club Carroll Mackin 9/16/83
5. Citicorp Diners Club Scott J. Gannon 10/5/83
6. Standard Oil Co. Herbert T. Proctor 10/12/83
 
 
 5
 Proctor, appellant, and others used the fraudulently obtained credit cards to purchase merchandise and services from various businesses, rarely paying any of the outstanding debt incurred. Proctor's scheme defrauded Citicorp and Standard Oil of nearly $40,000. The total scheme, however, involving other victimized companies resulted in more than $218,000 of unpaid credit card charges. Proctor's scheme similarly extended to airline companies. Airline tickets were ordered from major airlines and paid for by credit card. The airline tickets, originally issued as "non-refundable," were exchanged by the appellant, and others involved in the scheme, for airline tickets that were not designated "non-refundable." The airline tickets not bearing the "non-refundable" restrictive legend were ultimately returned by Messer and others to the airline companies for cash refunds. Proctor and appellant were thereby able to obtain cash using fraudulent credit cards.
 
 
 6
 Messer allowed her apartment's address and telephone number to be listed on the fraudulent credit card applications, and in the telephone subscriber listing, as the address and telephone number of the fictitious employer, Auto Traders, Inc., to facilitate the mail fraud scheme. Messer also allowed her address to be used as the fictitious credit card applicants' address on numerous occasions.
 
 
 7
 Furthermore, Messer agreed to pose as an officer of Auto Traders, Inc., to verify the fictitious employment and credit histories submitted on the credit card applications. Although numerous credit cards were issued prior to verification, appellant falsely verified credit and employment histories at least once, causing continued credit extension on a Citicorp Diners Club credit card.
 
 
 8
 Messer's participation in the mail fraud scheme included her use, and enjoyment, of various goods "purchased" with the fraudulently obtained credit cards. Furthermore, Messer frequently traveled using the fraudulently obtained airline tickets. Appellant's participation in the mail fraud scheme continued until Proctor's arrest in May, 1986. Proctor thereafter pled guilty to the charges against him and agreed to cooperate with the government's continuing mail fraud investigation.
 
 
 9
 On August 8, 1988, the appellant, Carol Levasseur Messer, was indicted on six counts of aiding and abetting mail fraud in violation of 18 U.S.C. Sec. 2 and 18 U.S.C. Sec. 1341.[1] The indictment charged the appellant with knowingly aiding and abetting six mail fraud offenses by participating in a scheme to defraud various airline and credit card companies to obtain money and property by false pretenses and misrepresentations.
 
 
 10
 Trial commenced on February 14, 1989, in the United States District Court for the Northern District of Ohio. Appellant moved for a judgment of acquittal, pursuant to Fed.R.Crim.P. 29, at the conclusion of the government's case. The district court judge denied appellant's motion. The appellant thereafter offered no witnesses on her own behalf.
 
 
 11
 On February 23, 1989, the jury found Messer guilty on all six counts. On May 8, 1989, the appellant was sentenced to three years incarceration on each count to be served concurrently. The district court judge suspended much of the appellant's sentence, however, sentencing Messer to ninety days incarceration, to be followed by a two-year probation period.
 
 
 12
 Messer timely filed a notice of appeal on May 15, 1989.
 
 II.
 
 13
 Messer contends that the district court erred by denying her Fed.R.Crim.P. 29 motion for judgment of acquittal based on insufficiency of the evidence. "It is well-settled that an appellate court considers, after viewing the evidence in the light most favorable to the prosecution, that any rational trier of fact could have found the defendant guilty beyond a reasonable doubt." United States v. Steele, 727 F.2d 580, 587 (6th Cir.) (citing Stacy v. Love, 679 F.2d 1209 (6th Cir.), cert. denied, 459 U.S. 1009 (1982)), cert. denied, 467 U.S. 1209 (1984). All reasonable inferences must be drawn which are consistent with the verdict. United States v. Green, 548 F.2d 1261, 1266 (6th Cir.1977) (citing United States v. Scales, 464 F.2d 371, 373 (6th Cir.1972)).
 
 
 14
 Though purely circumstantial evidence may be sufficient to sustain a conviction, see United States v. Chambers, 382 F.2d 910, 913 (6th Cir.1967), a reviewing court must find that substantial evidence supports the finding of guilt beyond a reasonable doubt. United States v. Green, 548 F.2d at 1266.
 
 
 15
 Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred.
 
 
 16
 Id. (quoting United States v. Martin, 375 F.2d 956, 957 (6th Cir.1967)).
 
 
 17
 The appellant was charged with aiding and abetting mail fraud. The mail fraud statute, 18 U.S.C. Sec. 1341, prohibits the use of the mails to execute a scheme to defraud:
 
 
 18
 Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail ... any matter or thing whatever to be sent or delivered by the Postal Service ... or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.
 
 
 19
 18 U.S.C. Sec. 1341 (1984). In Pereira v. United States, 347 U.S. 1 (1954), the Supreme Court held that one "causes" the mails to be used where he or she "does an act with knowledge that the use of the mail will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended...." Id. at 8-9.
 
 
 20
 A mail fraud conviction therefore requires the proof of a scheme or artifice to defraud, and mailing for the purpose of executing the scheme. Id. at 8; Bender v. Southland Corp., 749 F.2d 1205, 1215-16 (6th Cir.1984).
 
 
 21
 Messer contends that she should have been acquitted because she did not originate the mail fraud scheme or personally mail the fraudulent credit card applications specified in the indictment. Appellant further argues that any actions she may have taken to aid Proctor occurred after the mail fraud schemes were completed. Appellant's interpretation of the mail fraud requirements are mistaken, however, and her guilt is amply supported by the record.
 
 
 22
 The appellant's contention that she did not aid and abet Proctor in causing the fraudulent use of the mails is without merit. The prosecution did not need to prove that the appellant personally mailed the fraudulent credit card applications to support Messer's conviction for aiding and abetting mail fraud. See Pereira v. United States, 347 U.S. at 8. Instead, the crime of aiding and abetting merely contemplates the voluntary association in a criminal venture:
 
 
 23
 It is a well recognized rule that to be found guilty of the crime of aiding and abetting in a criminal venture, a defendant must "in some sort associate himself with the venture, ... participate in it as in something he wishes to bring about, [and] seek by his action to make it succeed." Drawing an exact line of sufficient participation ... is difficult if not impossible....
 
 
 24
 We reject the contention of appellant that it must be found that he had an interest or stake in the transaction before he could be convicted for aiding and abetting. Although the existence of a stake or interest in the outcome of the transaction is a factor to be considered in an aiding and abetting prosecution, it is not a controlling factor. Requiring a participant in a criminal venture to have a stake in the outcome of the crime would limit severely the reach of the aiding and abetting offense and would restrict unduly the enforcement of laws....
 
 
 25
 It merely must be shown that appellant "acted or failed to act with the specific intent to facilitate the commission of a crime by another."
 
 
 26
 United States v. Winston, 687 F.2d 832, 834-35 (6th Cir.1982) (citations omitted).
 
 
 27
 Although this court agrees with the appellant in the instant action that "guilty knowledge of the crime" alone is insufficient to affirm her conviction, see United States v. Bryant, 461 F.2d 912, 921 (6th Cir.1972), we do not agree with the appellant's contention that she did not participate in the mail fraud scheme. Though Messer did not formulate the mail fraud scheme or personally mail the fraudulent applications, she actively participated in the scheme by agreeing to verify fictitious credit and employment histories from her apartment which she listed in the telephone directory under a fictitious company name.
 
 
 28
 Appellant's contention that she verified fictitious credit histories after the mail fraud scheme had been completed is similarly without merit because Messer agreed to verify the fraudulent credit card application information if needed. It is therefore irrelevant if, and when, credit card companies spoke to Messer. Appellant enabled Proctor to submit fraudulent applications knowing that credit inquiries would be "verified" by Messer.[2]
 
 
 29
 Wesley Proctor's testimony clearly indicates that the appellant participated in the mail fraud scheme knowing that the fraudulent use of the mails would follow:
 
 
 30
 PROSECUTOR: Did you tell the defendant that you were using her address on the applications?
 
 
 31
 * * *
 
 
 32
 * * *
 
 
 33
 PROCTOR: Yes.
 
 
 34
 PROSECUTOR: Did you discuss with her that some of the companies might be calling on that phone number?
 
 
 35
 PROCTOR: Yes.
 
 
 36
 PROSECUTOR: Did you give her any other information?
 
 
 37
 PROCTOR: Well, I would tell her what to verify.
 
 
 38
 PROSECUTOR: Explain that, please.
 
 
 39
 PROCTOR: Well, most of this was done for your major credit cards like Citicorp or American Express, and I would tell her that I applied for them, and I would give her the name, and I would say, "When they call, tell them this," and have her verify anything that I had told her.
 
 
 40
 Proctor's testimony further reveals the importance of Messer's participation in the mail fraud scheme:
 
 
 41
 PROSECUTOR: When you listed Auto Traders, Inc. on the applications, was there ever any other address that you used as a business address for Auto Traders, Inc. other than the defendant's address?
 
 
 42
 PROCTOR: No.
 
 
 43
 PROSECUTOR: Was there any, was there ever any other phone number you used for Auto Traders, Inc. other than the phone in the defendant's apartment?
 
 
 44
 PROCTOR: No.
 
 
 45
 PROSECUTOR: Did anybody else--did you have anyone else help you verify the Auto Traders, Inc. employment?
 
 
 46
 PROCTOR: No.
 
 
 47
 Proctor testified that Messer also verified a written credit inquiry, received from Citicorp, by fraudulently answering the questions, signing the inquiry, and mailing it back to Citicorp. "Mailings occurring after receipt of the goods obtained by fraud are within the statute if they 'were designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no mailings had taken place.' " United States v. Lane, 106 S.Ct. 725, 733 (1986) (quoting United States v. Maze, 414 U.S. 395, 403 (1974)). It is evident that Messer's active involvement in the mail fraud scheme was essential to its success.
 
 
 48
 Messer clearly knew of the mail fraud scheme and intended by her actions to make the illegal venture succeed. See United States v. Winston, 687 F.2d at 835; see also Nye & Nissen v. United States, 336 U.S. 613, 619 (1949). Viewing "the evidence and all reasonable inferences in the light most favorable to the government," United States v. Holloway, 731 F.2d 378, 381 (6th Cir.1984), the evidence was "such that a reasonable mind might fairly find guilt beyond a reasonable doubt." Id. We therefore AFFIRM the district court's decision denying Messer's motion for judgment of acquittal.
 
 
 
 [1]
 18 U.S.C. Sec. 2 provides:
 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.
 The relevant provisions of 18 U.S.C. Sec. 1341 are set forth in the text of the opinion, infra.
 
 
 [2]
 The government argues that a "continuous mail fraud scheme" existed until Proctor's arrest in May, 1986, thereby placing Messer's actions within the requisite time frame (regardless of when the credit inquiries were actually answered by Messer). Because the appellant's agreement to verify the fraudulent credit information constituted the aiding and abetting of mail fraud, this court need not address the government's "continuous mail fraud scheme" contention