

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-14-2004

# USA v. Walters

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1058

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Walters" (2004). *2004 Decisions*. Paper 708.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/708

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


Nos. 03-1058, 03-1091 and 03-1133


UNITED STATES OF AMERICA

v.

ROBERT CHARLES WALTERS,
                                        Appellant in 03-1058

UNITED STATES OF AMERICA

v.

DENNIS OSLOSKY,
                                        Appellant in 03-1091

UNITED STATES OF AMERICA

v.

EDMOND HAROLD GENEST

                        Edmond Genest,
                                        Appellant in 03-1133
                        _____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim Nos. 01-cr-00076-1; 01-cr-00076 & 01-cr-00076-4 )
District Judge:  Honorable Donald J. Lee
_____

Submitted Under Third Circuit L.A.R. 34.1(a)


1

Before: NYGAARD, McKEE and WEIS, <u>Circuit</u> <u>Judges</u>.

Filed

_____

<u>OPINION</u>

_____

WEIS, <u>Circuit Judge</u>.

These three cases were consolidated for trial and similarly joined on appeal. Because this is a non-precedential opinion, the discussion will be abbreviated. We are aware that the parties are well acquainted with the facts and rulings that developed at the trial.

The defendants were convicted by a jury on counts of mail fraud in violation of 18 U.S.C. § 1341 and aiding and abetting in violation of 18 U.S.C. § 2. The charges resulted from the operation of a Ponzi scheme in which these defendants and other individuals sold worthless debenture bonds and guaranteed income stocks in corporate shells.

Sales efforts targeted wealthy, elderly individuals who were usually in the seventy to eighty year-old range. Because of their previous contacts with individuals in that age category, former insurance salesmen, particularly those who had sold health or long-term care policies, were recruited for operation of the scheme. The sales tactics included: deliberate misrepresentations about the financial strength and operations of the worthless corporations, intimations that the securities were guaranteed by the United

States government, claims that the securities were at least as safe as CDs, and statements that the salesmen and their parents had purchased them. During its short-lived existence, the scheme bilked elderly persons of millions of dollars.

Some of the participants in the scheme pleaded guilty and agreed to cooperate with the prosecution.

## I.
## THE DOUBLE JEOPARDY ISSUE

During the defendants' trial, the government asked one of its principal witnesses on direct examination about his obligations pursuant to his plea agreement. He replied that he would cooperate with the investigation and offer testimony if the matter came to trial. He continued, "I would be willing to take, upon the government's request, a lie detector test for any issue here." J.A. at 244. The trial judge granted the defendant's motion for a mistrial.

Defendant then moved to dismiss the indictment on a claim of double jeopardy. The trial judge denied the motion, finding that the mention of a lie detector test was inadvertent on the part of the government. The court found the Assistant United States Attorney's explanation of the incident to be entirely credible and observed that defendant's counsel declined to engage in an evidentiary hearing.

In United States v. Curtis, 683 F.2d 769, 774 (3d Cir. 1982), we explained that, in order to successfully invoke the double jeopardy clause in this setting, the defendant must demonstrate that the government's conduct was intended to provoke or

3

goad him into moving for a mistrial. The record in this case fails to meet that standard. Accordingly, we conclude that the District Court properly rejected the defendant's assertion of double jeopardy.

## II.

### SUFFICIENCY OF THE EVIDENCE OF MAILING

Defendants Walters and Oslosky challenge the sufficiency of the evidence on the mailing element of their mail fraud conviction. Walters preserved his exception to the intent to participate in the scheme, but not as to the mailing element.

The record demonstrates that salesmen such as Walters and Oslosky would bring checks and applications for the securities to Carrie Thomas, who acted as the secretary for the corporations. She would then send a letter to the customer acknowledging receipt of the check and advising that the security would be delivered personally by the salesmen. The personal delivery tactic was intended to provide another opportunity for additional sales, and it proved to be quite successful. In addition, the letter often contained specific references to commitments made by the salesmen, such as discounts or negotiated rates of interest.

There is ample evidence in the record to establish that Oslosky furnished information to Thomas to be included in the letters. In addition, a search of the premises revealed correspondence to his customers in Oslosky's desk. Similarly, the record reveals examples of Walters' correspondence to customers in addition to the letters of receipt.

We have discussed the elements of mail fraud on a number of occasions.

4

One recent example is <u>United States v. Pharis</u>, 298 F.3d 228 (3d Cir. 2002). As we explained there, the government must prove a scheme to defraud, use of the mails made to further the scheme and fraudulent intent. <u>See id</u>. at 234. The mailings need not be done by the defendant personally, nor is it "necessary that the scheme contemplate[s] use of the mails as an essential element." <u>Id</u>. (quoting <u>Pereira v. United States</u>, 347 U.S. 1, 8 (1954)). It is enough if the mailing is "incident to an essential part of the scheme." <u>United States v. Tiller</u>, 302 F.3d 98, 101 (3d Cir. 2002) (quoting <u>Pereira</u>, 347 U.S. at 8).

Based upon these standards, the jury had more than sufficient evidence to support its verdict against Oslosky and Walters.

III.

<u>FRAUDULENT INTENT</u>

Defendant Genest contends that the government failed to present evidence of fraudulent intent on his part. Genest was less involved in the scheme than Oslosky or Walters. Nevertheless, the question of his intent was for the jury's consideration. Genest accompanied Walters on several sales presentations and had to know that much of what he told the customers was false. Genest relies on the fact that people trusted him, but that view of his character was one of the reasons that persuaded these individuals to place their investments in these worthless securities.

The best that Genest could say about his conduct was that he was blind to what was going on around him. The jury, however, was entitled to conclude that his blindness was self-induced and deliberate. Defendant could not close his eyes while

5

those who trusted him were being fleeced.

IV.

<u>SUFFICIENCY OF THE EVIDENCE FOR MAIL FRAUD</u>
<u>AND AIDING AND ABETTING</u>

Walters also contends that there was insufficient evidence to convict him of mail fraud or aiding and abetting under sections 1341 and 1342. First, we note that the second charge was not a violation of section 1342, which relates to the use of a fictitious name or address, but rather of 18 U.S.C. § 2, which relates, in part, to aiding and abetting.

Walters seems to feel that because he did not personally mail any of the papers that were used in the fraud, he did not violate section 1341. He cites language from <u>Kann v. United States</u>, 323 U.S. 88, 95 (1944), to the effect that mail fraud only covers "those limited instances in which the use of the mails is part of the execution of the fraud." Walters reads <u>Kann</u> far too narrowly. In <u>Schmuck v. United States</u>, 489 U.S. 705, 710-11 (1989)[1], the Court explained that "it is sufficient for the mailing to be 'incident to an essential part of the scheme,' or 'a step in the plot.'" We have used similar formulations in previous mail fraud convictions. <u>See</u>, <u>e.g.</u>, <u>Tiller</u>, 302 F.3d at 101; <u>United States v. Coyle</u>, 63 F.3d 1239, 1244 (3d Cir. 1995). Based upon these standards, we find no merit to Walters' contention that there was insufficient evidence to convict him.

---

[1] Quoting <u>Pereira v. United States</u>, 347 U.S. 1, 8 (1954) and <u>Badders v. United States</u>, 240 U.S. 391, 394 (1916), respectively.

6

V.

HEARSAY CHALLENGE

Walters also challenges the introduction into evidence of an order of the Pennsylvania Insurance Commissioner that included findings of fact and conclusions of law. He contends that the prejudice generated by this document outweighed its probative value. Furthermore, he argues that Fed. R. Evid. 803(8) bars admission of this document because it contains findings of fact.

The Insurance Commissioner had found Walters' conduct during the years 1984 through 1989 included churning insurance policies, particularly those issued to elderly women. That evidence was relevant to Walters' defense that his activity in the case at hand came about as a result of misleading information from the principals of the fraudulent corporations. The trial judge cautioned the jurors that they should consider this evidence on the issue of Walters' intent, plan and/or absence of mistake and not infer any bad character trait.

The government concedes that admission of this public record may have been erroneous. However, we conclude that if erroneous, the admission of this evidence was harmless in light of the overwhelming evidence of Walters' guilt of this elaborate swindle.

7

Our review of the record convinces us that with the exception of the double jeopardy and evidentiary issues, this case was a paradigm for jury consideration. There is more than sufficient evidence for the jurors to decide as they did.

Accordingly, the judgments of conviction will be affirmed.