WALLACE, Circuit Judge,
concurring and dissenting:
I concur with regard to the majority’s treatment of Counts 1, 2, 3, 4, 5, and 7, but I dissent from the majority’s conclusion with regard to Count 6.
I agree with the majority that United States v. Brown, 771 F.3d 1149 (9th Cir. 2014), controls with regard to Count 4. Eglash is correct that the success of his fraudulent scheme did not depend upon receiving the notice of disability award underlying Count 4. That, however, is not the standard for determining whether a mailing was made “for the purpose of executing such scheme or artifice or attempting so to do” under 18 U.S.C. § 1341. The use of the mails “need not be an essential element of the scheme;” rather, it is “sufficient for the mailing to be ‘incident to an essential part of the scheme.’ ” Schmuck v. United States, 489 U.S. 705, 710-11, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989), quoting Pereira v. United States, 347 U.S. 1, 8, 74 S.Ct. 358, 98 L.Ed. 435 (1954) (emphasis added). In particular, a government entity’s mailing of a routine document can create liability for mail fraud, as shown by the holdings in both Schmuck and Brown. 489 U.S. at 714-15, 109 S.Ct. 1443, 771 F.3d at 1158; see also United States v. Mitchell, 744 F.2d 701, 703 (9th Cir.1984) (upholding conviction based on mailings that were “routine, intrinsically innocent, and required by law”).
Count 6 cannot be distinguished from the majority’s conclusions with respect to Count 4. Although the Social Security Administration’s (SSA) mailing of the application summary neither concealed nor perpetuated the fraud, and the mailing of the application summary was neither essential nor even necessary to the scheme, the same could be said of the mailing underlying Count 4, as well as the mailings in Brown.
In Brown, it was not essential to the defendants’ scheme that the government mail a Notice of Chapter 7 Bankruptcy Case to one of the defendants; as co- *890 conspirators, the defendants were fully aware of the bankruptcy filing (since it was an essential part of their scheme), and the scheme would not have been harmed in any way if the government had failed to mail the Notice. However, the defendants’ fraudulent scheme started the bureaucracy of the bankruptcy process, and as part of that process the government mailed out both a Notice of Chapter 7 Bankruptcy Case and eventually a Notice of Discharge. Brown, 771 F.3d at 1158. The mailing was only “necessary” in the sense that the mailing of bankruptcy notices to creditors follows the act of filing for bankruptcy — it is a natural part of the bureaucratic process set into motion by the filing. See also Mitchell, 744 F.2d at 704 (“the fraudulent scheme triggered the mailings, which would not have occurred except as a step in the scheme”). Likewise, in this case, Eglash started the Social Security application process to defraud the government, and the application summary was mailed to him as part of that process.
It is true that “[t]he relevant question at all times is whether the mailing is part of 'the execution of the scheme as conceived by the perpetrator at the time.” Schmuck, 489 U.S. at 715, 109 S.Ct. 1443. But this does not require that the perpetrator specifically envision, at the scheme’s outset, that the charged mailing will occur; it is enough that the scheme conceived of by the perpetrator include the mailing as part of its normal execution. In Brown, for example, there is no indication that the defendant envisioned the mailing of the notices when he was planning the scheme. Instead, the question was whether the notices were part of the execution of the scheme as conceived by the defendant. 771 F.3d at 1158.
Even if Eglash had to envision specifically each individual mailing at the outset of his scheme, the evidence suggests that Eglash would have anticipated the SSA mailing him the application summary at issue here. Eglash had already experienced the entire Social Security application process when he assisted Hayes in applying for her own Social Security benefits. Based on his familiarity with applying for benefits, the jury could have reasonably inferred that Eglash was aware of the SSA’s process, including the fact that an application summary would be mailed to him. Also, even if Eglash had no experience with the application process, information about the process is easily accessible, including the fact that an application summary is mailed out after the submission of information online and over the phone. See, e.g., Social Security Administration Program Operations Manual System GN 00201.015 (2015), available at http://policy. ssa.gov/poms.nsf/lnx/0200201015.
Eglash’s conduct is analogous to the defendant’s conduct in Mitchell. In Mitchell, the defendant set in motion the city government approval process for a condominium project as part of his scheme; the court concluded that he “knew the mails would be used in the course of securing the city’s approval of the project” because city ordinances so indicated. 744 F.2d at 704, citing United States v. Brutzman, 731 F.2d 1449, 1454 (9th Cir.1984), overruled on other grounds by United States v. Charmley, 764 F.2d 675, 677 n. 1 (9th Cir.1985) (defendant “set the forces in motion that foreseeably would involve use of the mails”). Likewise, Eglash, having not only been through the application process before, but also guided by the SSA’s publicly displayed information, would have known the SSA would use the mail to send him a summary of his application.
Along with my colleagues, I was troubled by the government’s assertion at oral argument that Eglash could have been subject to an additional mail fraud charge *891 for each additional copy of the application summary that was mailed to him. However, that issue is not before us, because such an expansive interpretation of the mail fraud statute is not necessary to uphold the conviction on Count 6. Our court has already held that mailings triggered in the ordinary course of a fraudulent scheme support mail fraud charges; inadvertent or erroneous mailings would fall outside that scope. I therefore conclude that because there was evidence offered at trial to show that the mailing of the summary was part of the Social Security application process, the jury could have reasonably found that the mailing was “incident to an essential part of [Eglash’s] scheme.” Therefore, I would affirm the conviction on count 6, as well as on the other counts.